In the Matter of the Estate of Arthur J. Lloyd, Jr., Deceased.
Paul F. Amling, et al., Claimants, Appellants, v. Lorraine J. Lloyd, Executor of the Estate of Arthur J. Lloyd, Jr., Deceased, Appellee.

Gen. No. 48,849.

First District, Third Division.

October 23, 1963.

Lewis, Overbeck & Furman, of Chicago, for appellants.

John Blyer Callahan, of Chicago, for appellee.

MR. JUSTICE DEMPSEY delivered the opinion of the court.

In 1957 Arthur J. Lloyd, Jr., and his wife, Lorraine, entered into a contract with the Oak Park National Bank, trustee, to purchase certain improved property in Oak Park, Illinois, for $205,000. A substantial down payment was made and the contract provided that the balance of the purchase price was to be paid at the rate of $1,155 per month with interest at 5%.

In 1958 the Oak Park National Bank assigned its interest in the contract to the appellants, Paul F. and Alwina Amling. Arthur Lloyd died in December, 1960. In 1961 the Amlings filed a claim against the Arthur Lloyd estate under section 193 of the Probate Act. (Ill Rev Stats 1961, c 3, § 193.) The claim was for $152,942.28, which sum represented the remaining balance of the purchase price. Lorraine Lloyd, the executor of the estate, moved to strike the claim. Her

motion was sustained and the Amlings have appealed from the order of dismissal.

Section 193 provides:

"§ 193. Claims Not Due.) A claim against a decedent's estate, that is not due, may be filed and allowed and paid out of the estate as other claims; but interest which has been included as a part of the principal obligation, computed from the time of the allowance of the claim to the time when it would have become due, shall be deducted."

Statutes similar to section 193 have been part of the Administration Act since 1829. The immediate predecessor to section 193 was section 67 of the Administration Act of 1872, Ill Rev Stats (1937) c 3, § 68, which read:

"Any creditor, whose debt or claim against the estate is not due, may, nevertheless, present the same for allowance and settlement, and shall, thereupon, be considered as a creditor under this act, and shall receive a dividend of the said decedent's estate, after deducting a rebate of interest for what he shall receive on such debt, to be computed from the time of the allowance thereof to the time such debt would have become due, according to the tenor and effect of the contract."

Section 67 was interpreted by our courts on several occasions and two rules of construction were established: (a) section 67 was held to authorize the allowance of claims based on an absolute contractual liability, but not claims based on a contingent liability; (b) in determining whether the obligation of a contract was absolute or contingent, it was held that the happening which might make the obligation contingent had to be conditioned upon an outside force

217

and could not be within the control of either party to the contract. In Mackin v. Haven, 187 Ill 480, 58 NE 448, the court said:

"In construing section 67 of chapter 3 . . . we held in Dunnigan v. Stevens, 122 Ill 396, that, if the obligation is an absolute undertaking, the claim can properly be proved against the estate in the probate court, even where the debt or claim is not due, but that, if the obligation is merely a contingent liability, then the claim is not properly provable in the probate court, and cannot be allowed."

In Union Trust Co. v. Shoemaker, 258 Ill 564, 101 NE 1050, the court stated:

"Section 67 provides that a claim not due may be presented and allowed, with a proper rebate of interest. This section refers only to claims on which there is an absolute liability though the time of payment is postponed, but has no reference to claims dependent upon a contingency which may or may not ripen into a liability. The holder of a claim of the latter class is not a creditor of the estate under the statute and cannot have his claim allowed."

Union Trust Co. v. Shoemaker was discussed in Sanders v. Merchants' State Bank of Centralia, 349 Ill 547, 182 NE 897. The opinion noted that the case concerned a replevin bond executed by Shoemaker. Shoemaker died before a judgment was entered in the replevin suit. The Sanders opinion said:

"Shoemaker having died before judgment, of course no judgment was or could be rendered in the replevin suit against him or his estate. There was no breach of the bond until judgment was rendered, and before that occurred the liability

was entirely contingent. There was a potential liability on the bond but no actual liability until the breach by failing to prosecute the suit with effect. Until that time there was no liability, present or future, to pay, and, of course, none for which any claim could be exhibited or prosecuted. The liability was dependent on an event which neither party could control and was therefore contingent."

The Sanders opinion also cited Chicago Title and Trust Co. v. Fine Arts Bldg., 288 Ill 142, 123 NE 300. In the latter case a tenant had a lease for a term of ten years at a monthly rental. The tenant assigned the lease and the assignee died before the term ended. The lessor presented a claim against the assignee's estate for the rent for the remainder of the term. The court held that because of contingencies in the lease the claim could not be said "to present such an absolute liability as that contemplated in section 67 of the Administration Act . . ." The court held, and the Sanders opinion noted, that the claim was contingent because the lease provided for contingencies, "the happening of which was not within the control of either party, which might defeat all right to recover rent. . . ."

■■ The interpretations given to former section 67 apply equally to present section 193. The evident purpose of section 193, and its predecessors, is to put all creditors—those with obligations currently due and those with obligations due in the future—on the same footing. It is possible that the allowance of undue claims could be burdensome to an estate. On the other hand, there are advantages. It permits the court to see at one time the entire estate, its assets and its debts; it facilitates the settlement of estates, and it benefits creditors whose claims would not mature within the time fixed for the presentation of claims. James, Illi-

nois Probate Law and Practice, vol 4, sec 193.1. And, as was said in Hall v. Hoxsey, 84 Ill 616:

"There is much wisdom in the law requiring estates to be settled at an early day. Costs are saved, estates are not as liable to be squandered by administrators, who may become negligent or reckless, by long delay, and at the same time creditors secure the amounts due them, and the balance of assets can be distributed among the heirs or devisees. At all events, the legislature had the power to declare that appellees could recover the amount of their notes before due, and it is not the province or duty of courts to interfere."

The contract in the present case is a typical real estate installment purchase agreement which provides that the seller shall convey title when the purchase price is fully paid. It further provides that if any payment is not made when due or if the buyer fails to perform any of the covenants, the contract, at the option of the seller, shall be forfeited and all payments made shall be retained by the seller as liquidated damages. The covenants of the contract were made obligatory on the heirs, executors and assigns of the parties.

From the date of the contract until the present time the monthly payments have been made as they became due and all the contractual obligations of the Lloyds' have been kept. The single question, therefore, to be determined on this appeal is whether the unpaid purchase price is an allowable claim under section 193; in other words, is the unpaid purchase price a claim on which there is an absolute liability or is it a claim dependent upon a contingency? The Probate Court found the claim to be contingent. The order of dismissal stated: ". . . the said claim is contingent in character and not properly a claim which may be allowed under Section 193 of the Probate Act. . . ."

It is the appellee's contention that the Lloyds' obligation under the contract is contingent in character because as purchasers they are not obligated to pay the balance at all events; that if they should default in payment, the Amlings have the option to declare the contract null and void, repossess the property and retain the payments already made as liquidated damages, instead of demanding the remainder of the purchase price or seeking specific performance of the contract; that if this option were to be exercised the installments remaining unpaid would be uncollectible, and hence the liability is contingent upon the exercise of the option.

A contract similar to the instant one was before the Appellate Court in Robison v. Harrington, 61 Ill App 543 (1895). In affirming a judgment finding the liability contingent, the court followed the same reasoning advanced by the present appellee. The facts were these: William Miskimen, the owner, agreed to convey by warranty deed a piece of real estate to William Lewis, the purchaser, if Lewis first paid him $1,250, with interest, in monthly installments of $12.50. The contract provided that if Lewis failed to make the payments or failed to perform any of the covenants he made, the contract could, at Miskimen's option, be forfeited and all payments retained in liquidation of damages. All covenants were made the obligation of the heirs, executors and assigns of the parties. Lewis died after having paid $111.50 on the contract. A claim for the unpaid balance was presented under section 67. The claim was disallowed in the Probate Court and in the Circuit Court. The Appellate Court affirmed the Circuit Court, saying:

"We are of the opinion, however, that only unconditional contracts for the payment of money fall within the intention of the section. We do

221

not think it applies to a claim so uncertain that it may at any time be declared void on default of payment of any of the installments named. This contract expressly provides that a failure to make any one of the monthly payments at the time due will work a forfeiture of the contract and all sums before then paid shall be retained by appellant, and he shall be entitled to re-enter and take possession of the premises sold. It also provides for a forfeiture in the event of non-performance of any other of the covenants. To carry out the agreement as written would require the administrator to wait about eight years to make all the payments. The law requires him to settle the estate long before that time."

. . . .

"We are of the opinion that the claim is not included within such as are contemplated by section 67 above quoted."

However, on appeal (Miskimen v. Culbertson, 162 Ill 236, 44 NE 396 (1896)) the Supreme Court disagreed with the Appellate Court's application of section 67, stating:

"If the right of appellant to probate his claim rested solely on section 67 of the statute, supra, and there was no other statute bearing on the question, we would have no hesitation in holding that he was entitled to have his claim allowed against the estate. That section of the statute declares that any creditor whose debt or claim against the estate is not due may present the same for allowance. William Lewis had executed a contract, in which he agreed to pay appellant a certain specified sum of money at certain specified dates. Appellant was therefore a creditor of

Lewis, and his debt not being due he came within the provision of the section of the statute."

The court held that another statute, section 111 of the Administration Act of 1872, had a bearing on the claim and that section 111 had to be applied in conjunction with section 67. The court concluded that section 111 restricted Miskimen's right under section 67 and prohibited him from having his claim allowed. The court therefore affirmed the Appellate Court. Later, the construction placed on section 111 in the Miskimen case was expressly overruled in Gross v. Estate of Thornson, 286 Ill 185, 121 NE 600 (1919). The court stated: "In our judgment the case of Miskimen v. Culbertson, supra, gives an improper construction of section 111 and it must be overruled." If the Supreme Court in the Miskimen case had not predicated its decision on section 111 and had rested it on section 67, we must presume that it would have reversed the Appellate Court; upon facts and under a contract almost identical with that of the present case, it would have had "no hesitation in holding that he [the creditor, Miskimen] was entitled to have his claim allowed against the estate."

A statement of comparable significance was made by the Supreme Court in Chicago Title & Trust Co. v. Fine Arts Bldg., 288 Ill 142, 123 NE 300. The court went to the trouble of distinguishing real estate installment purchase contracts from its holding that, because of the contingencies in the lease there being considered, the claim did not "present such an absolute liability as that contemplated in section 67 of the Administration Act." The court stated: "This is to be distinguished from a contract to purchase land on installments, for in the latter case the obligation is to pay at all events." Thus, in both the Miskimen and the Chicago Title & Trust cases, the court said that

223

in a contract to purchase land on installments the debtor's obligation was absolute and the creditor's claim should be allowed under section 67.

We are of like opinion. There is no clause in the contract in this case providing for its termination upon the occurrence of events not within the control of the parties. The Amlings have the right to require full performance of the contract by the executor or heirs of Arthur Lloyd. The fact that there may be a subsequent default and that the Amlings may thereupon elect one of several remedies, does not affect the liability of the executor or heirs. The liability is a fixed obligation of the estate; and the right to choose the remedy of forfeiture, which right is under the control of one of the parties, does not change an absolute liability into a contingent one.

The cause is reversed and remanded with directions to overrule the motion to strike the claim.

Reversed and remanded with directions.

SCHWARTZ, P. J. and McCORMICK, J., concur.