(No. 55801.—

*In re* ESTATE OF MARY WORRELL, Deceased (Dawson M. Cooper, Adm'r, Appellant; Dennis Barnes, Appellee).

*Opinion filed October 22, 1982.—Rehearing denied November 24, 1982.*

John A. Farrell, of Farrell, Heil, Long & St. Peters, P.C., of Godfrey, for appellant.

Dennis A. Brandt, of Mateyka, Hill, Hill & Armstrong, of Granite City, for appellee.

JUSTICE SIMON delivered the opinion of the court:

A dramshop action filed in the circuit court of Madison County by Dennis Barnes against tavern owner

Mary Worrell was a prelude to these proceedings in probate. After the filing of the dramshop action and service of summons on Mrs. Worrell, but before it was tried, she died intestate on July 19, 1978. Apparently, however, Barnes did not learn of her death until approximately nine months later. In the meantime, the following events transpired in the probate division of the Madison County circuit court:

August 22, 1978     Letters of administration were issued to Mrs. Worrell's son-in-law, Dawson Cooper, and publication for claims of creditors was made in accordance with the Probate Act of 1975. Ill. Rev. Stat. 1977, ch. 110½, par. 18—3.

December 19, 1978 The initial inventory of Mrs. Worrell's property, including her tavern and a motel she owned, was filed in the probate proceeding.

February 22, 1979 The statutory period for claims against the estate as originally inventoried provided for in section 18—12 of the Probate Act of 1975 (Ill. Rev. Stat. 1977, ch. 110½, par. 18-12) expired.

April 30, 1979     Mr. Barnes, now aware of Mrs. Worrell's death, sent notice of his claim for the first time to the administrator. Apparently this was the first knowledge the administrator had of the dramshop action.

June 5, 1979     Notice of Barnes' claim to the administrator was filed in the probate proceedings.

At the same time he filed his claim in the probate proceedings, Barnes filed a motion to substitute the ad-

ministrator as the party defendant in his still-pending dramshop action. In November of that year the case was tried, and a judgment was entered in favor of Barnes in the amount of $15,000. Of that amount, $5,000 was paid by the tavern's insurance carrier. In order to satisfy the remaining balance, Barnes could look only to the estate.

Two substantive issues are presented. The first is whether Barnes' claim against the estate was properly made within the limitations period provided for in section 18—12 of the Probate Act of 1975 (Ill. Rev. Stat. 1977, ch. 110½, par. 18-12), and thus eligible to be satisfied from inventoried assets. The other is whether, if Barnes' claim was not made within the proper period, profits made from operating the decedent's motel and tavern businesses after her death can be used to satisfy the debt, since only the businesses themselves and not the income from them had been formally inventoried.

The circuit court rejected Barnes' claim for payment of the balance of his judgment out of the estate assets, ruling that his claim was presented to the administrator too late to be satisfied from inventoried assets and that profits made from operating Mrs. Worrell's businesses should be regarded as part of the inventoried assets that generated them. This decision was reversed by the appellate court with one judge dissenting. (100 Ill. App. 3d 566.) The appellate court held that any profits generated by the tavern and motel while operated by the administrator were the equivalent of newly discovered assets and thus subject to creditors' claims, even if those claims were filed late. We allowed the administrator's petition for leave to appeal.

Before considering the respective merits of the position of the parties, we deal briefly with a jurisdictional issue raised by the administrator. It concerns whether the claimant's notice of appeal from the circuit court to the appellate court was timely.

On August 29, 1979, the probate division allowed the administrator's motion to bar payment of Barnes' claim out of the assets of the estate included in the original inventory because the claim was filed late. On January 17, 1980, the same court ordered that Barnes' claim could not be satisfied out of the income from the inventoried assets and that payment of the claim was limited to assets and income from assets inventoried after the expiration of the time for claims against the assets as originally inventoried. The circuit court refused to vacate its January order on February 28, 1980, but on that date it did allow a motion by Barnes for an accounting of all funds subject to his claim. In response to that the administrator on April 1, 1980, filed his final report of assets inventoried after the original claim period. The assets so inventoried were sufficient to satisfy only $1,000 of the balance of the dramshop judgment, leaving $9,000 unsatisfied. That report was approved by the court on May 16, 1980, by an order that also approved the sale of certain of the late-inventoried assets, so that Mr. Barnes could be given his partial satisfaction in cash. He appealed that order.

Supreme Court Rule 304(b)(1) states that "[a] judgment or order entered in the administration of an estate, guardianship, conservatorship, or similar proceeding which finally determines a right or status of a party" is appealable. (73 Ill. 2d R. 304(b)(1).) None of the orders of the probate division until its May 16 order finally determined the claimant's position. Mr. Barnes wanted one thing from the estate of Mary Worrell: He wanted his judgment against it paid. He did not care which fund the money was paid from so long as it was fully paid. The August 1979 order stated only that he could not be paid from inventoried assets. There was still the possibility his claim could be satisfied out of the profits generated by the motel and tavern businesses or out of assets in-

ventoried after the six-month period. The January 1980 order eliminated the profits as a source of satisfying the claim, but still there were the assets inventoried after the end of the claims period to be reckoned with. The value and extent of these assets were unclear. Although one supplemental inventory had been filed in July of 1979, no final inventory had been filed. Some of the assets inventoried in July were causes of action, and therefore subject to changes in value between July and January. Moreover, there was the possibility that other assets had been discovered since. The probate division had by no means ended the proceedings with regard to Barnes' claim.

If the assets inventoried after the original inventory turned out to be large enough to satisfy the judgment, any appeal from the January 1980 order or the February 1980 order that upheld the January order would have been mooted. Only the May 1980 order which approved the final inventory of the estate and approved payment of the value of late inventoried assets to Barnes was a final adjudication of the claim. It was not until that order that the right or status of Barnes as a creditor was finally determined, and for that reason his notice of appeal was timely filed and properly heard by the appellate court.

Barnes advances two reasons for his prevailing on the merits, but we find neither persuasive. First, he contends his claim should be considered timely presented because the dramshop suit against the then-living Mrs. Worrell was filed before the six-month period for claims had expired (in fact before it had even begun) and was pending during the entire six-month period.

Under the law in effect at the time the estate was opened, there were two ways to file a claim against a decedent's estate: filing it in the probate proceeding so that it became part of the estate file or suing the estate

representative directly, thus serving process upon him. (See Ill. Rev. Stat. 1977, ch. 110½, par. 18—1; *Berke v. First National Bank & Trust Co.* (1979), 77 Ill. 2d 452.) In *Morse v. Pacific Ry. Co.* (1901), 191 Ill. 356, 361, this court observed: "[T]he fact that [a suit] was pending against [the decedent] at his death does not amount to an exhibition of the claim or demand made against the estate. That can only be done by filing the claim in [the court] having jurisdiction of the estate, or by bringing suit against the executors in some court of competent jurisdiction." (Accord, *Tinker v. Babcock* (1903), 107 Ill. App. 78, 82.) Had Barnes done either of these things on or before February 22, 1979, his claim would have been timely, but he did not.

Barnes argues, however, that after the merger in 1964 of the probate court and the circuit court, a suit pending against the deceased person in the circuit court should be sufficient presentment of the claim. We do not agree. Before the consolidation of all courts of original jurisdiction in Illinois into one circuit court, it was incumbent upon creditors to bring their claims to the attention of the representative of the estate. The representative had no obligation to go out and look for claims. In fact, even if he knew of a claim, the law did not require him to pay it unless he was formally notified as described above. (See *Morse v. Pacific Ry. Co.* (1901), 191 Ill. 356; *In re Estate of Newcomb* (1972), 6 Ill. App. 3d 1094; *Bosnak v. Murphy* (1960), 28 Ill. App. 2d 110.) If the fact that the probate court is now part of the circuit court were allowed to change what is required of a claimant, that would no longer be so. The estate representative would be required to pore over the circuit court docket, rather than simply wait to be sued or wait for notice that a claim has been placed in the estate's file in the probate division.

Such a change is unwarranted; requiring the creditor

to keep track of his debtors rather than relying on the estate representative to dig up creditors is the more sensible practice. After all, we see no good reason to require an administrator to search the circuit court for claims against the deceased but not search the Federal court, other circuits, or for that matter contact possible creditors such as local utilities or retail stores and ask them if any debts are outstanding.

A leading Illinois authority agrees that a suit filed in a different division of the circuit court is not the equivalent of filing in the probate proceeding:

> "[I]n certain instances claims are asserted against the estate of a deceased person in a forum other than that in which the proceedings for the administration of the decedent's estate are pending. Examples would include an action on a claim commenced against an executor in a federal court ***, or an action brought in another circuit court, *or another division of the same court* ***. In such case it is held that the claim is 'filed' when the action is instituted in a court of competent jurisdiction *and* service of summons is made on the executor or administrator. *However, it is not enough merely to commence suit within the limitation period; it is also necessary to effect service of summons within that time in order to constitute a sufficient exhibition of the claim. If the rule were otherwise, the purpose of the non-claim statute would be frustrated.*" (Emphasis added.) 4 W. James, Illinois Probate Law & Practice sec. 204.9 (Supp. 1975).

Moreover, recent amendments to the Probate Act of 1975 indicate the importance the legislature continues to place on ensuring that estate representatives receive notice of all claims without having to go hunting for them. Section 18—1 states that a claim may be filed either with the court or with the estate representative. When a claim is filed in court, however, notice must be served upon the representative within 10 days. If a claim sent only to the representative is rejected by him, it is to be filed in the probate proceedings within 60 days. (Ill. Rev. Stat. 1981,

ch. 110½, par. 18—11.) This statute is more liberal than that in effect at the time this case arose; yet it is just as insistent that the creditor should formally notify the estate representative of his claim. It is indicative of a policy that has existed in Illinois for many years.

Barnes' second contention is that, as the appellate court held, even if his claim was filed late, he can still satisfy his claim out of the profits earned by the decedent's motel and tavern businesses, because, although the businesses themselves were inventoried, their income had not been separately inventoried.

Section 18—12 of the Probate Act of 1975 stated at the time:

"All claims against the estate of a decedent *** not filed within 6 months from the issuance of letters of office are barred as to the estate which has been inventoried within 6 months from the issuance of letters. ***." (Ill. Rev. Stat. 1977, ch. 110½/, par. 18—12.)

It should be noted that this part of the statute is no longer in effect and has been replaced by a statute that bars late claims altogether. (Ill. Rev. Stat. 1981, ch. 110½, par. 18—12.) Thus this question is not likely to reoccur in the future.

Barnes argues that income from inventoried assets must be separately inventoried and that it cannot be considered part of the already inventoried asset that generated it. In our opinion, however, section 18—12 was meant to draw a distinction between known (and thus inventoried) assets and newly discovered assets. From 1829 until 1933, in fact, the statute read, "[A]ll demands not exhibited within [the proper period] shall be forever barred unless such creditor shall find other estate of the deceased not inventoried ***; in which case his claim shall be paid *** out of such *subsequently discovered* estate ***." (Emphasis added.) (1833 Rev. Laws 648; Ill. Rev. Stat. 1929, ch. 3, par. 71.) The section allowed heirs and creditors of an estate to know and rely on the size of the estate. That way

they would know whether and to what extent their claim would be paid, and quick payment was facilitated. Newly discovered assets, however, were considered a windfall, and therefore subject to late claims. It was a minor accommodation for late filers, one that was unknown in most other States. Most States bar such claims altogether. See, *e.g.,* Del. Code Ann. tit. 12, sec. 2102 (1974); Hawaii Rev. Stat. sec. 560:3—803 (1976); Idaho Code sec. 15—3—803 (1979); Or. Rev. Stat. sec. 115.005 (1981).

It would be error to classify income from inventoried assets as newly discovered assets. Income from assets does not carry with it the element of surprise one might encounter in discovering property of the decedent of which the parties in interest were not previously aware. One expects one's motel business will make money; that's what it's for. On the other hand, one does not expect to find a roll of hundred-dollar bills hidden in the attic. A more sensible approach is to consider profits to be part of the inventoried asset that produced them, and thus protected from late filers.

The case of *In re Estate of Garawany* (1980), 80 Ill. App. 3d 401, provides some support for this conclusion. In that case, a late-filing creditor attempted to satisfy his debt out of proceeds from a medical insurance policy. The policy itself had been inventoried, but not the proceeds from the claim. The appellate court held that the proceeds from the policy should be considered inventoried at the time the policy itself was inventoried.

It seems unlikely that the legislature was attempting to devise a rule that would penalize heirs for operating profit-making businesses while the estate is being probated. Why continue to operate a motel if any profit that might be made will be taken? It would be better to prevent the risk of loss and the wear and tear on the capital assets by selling the motel. Barnes almost concedes this point by strenuously arguing that because the administrator failed to se-

cure leave of court to run the decedent's businesses as required by section 19—6 of the Probate Act of 1975 (Ill. Rev. Stat. 1977, ch. 110½, par. 19—6), the profits he earned should be subject to late claims even if under usual circumstances profits from inventoried assets would not be available to satisfy late claims. He points out that when an administrator fails to get court permission to run the decedent's business for more than a month and the business suffers a loss, the administrator is held liable for the loss. But this rule is meant to protect heirs from imprudent administrators. It should not be converted into a penalty against heirs for having administrators who act without proper authority.

The appellate court reasoned that because the purpose of the claims-period cutoff is to promote the speedy settlement of estates, profits should be considered uninventoried assets as that will encourage estate representatives to wrap up estates and distribute assets early, so as to avoid claims. Its analysis assumes the only concern of section 18—12's exception for uninventoried assets is to speed up probate, and that it is not meant to be a limited accommodation to late filers at all, but only a means to frighten estate representatives into early distribution of assets. Such an interpretation penalizes heirs of complex estates and encourages estates to be rushed into distribution when this may not be in the best interest of those inheriting the estate. It is not persuasive.

For the foregoing reasons, we reverse the appellate court and affirm the circuit court.

*Appellate court reversed;*
*circuit court affirmed.*