JOHN GIBBS *et al.*, Claimants-Appellants, v. ESTATE OF CHARLES F. DOLAN, Appellee.

First District (2nd Division)   No. 85—2299

Opinion filed July 22, 1986.

John Thomas Moran, of Law Offices of John Thomas Moran, of Chicago, for appellants.

No brief filed for appellee.

Gordon B. Nash, Jr., and Lolla M. Harrison, both of Gardner, Carton & Douglas, of Chicago (Arthur D. Wilkins, of counsel), for *amicus curiae* Law Bulletin Publishing Co.

JUSTICE HARTMAN delivered the opinion of the court:

Claimants, John and James Gibbs, filed a probate claim against the estate of Charles F. Dolan after the expiration of the statutory six-month claim period seeking to recover the purchase price of a motor coach pursuant to the revocation-of-acceptance provisions of the Uniform Commercial Code (UCC) (Ill. Rev. Stat. 1983, ch. 26, par. 2—608). The circuit court ruled that the claim was time barred under section 18—12 of the Probate Act of 1975 (Act) (Ill. Rev. Stat. 1983, ch. 110½, par. 18—12). Claimants appeal contending: (1) the notice by publication provisions of the Act violate the due process clauses of the Illinois and Federal constitutions; and (2) the Chicago Daily Law Bulletin is not a secular newspaper of general circulation.

Claimants, who are engaged in the travel business, purchased a used 1981 MCC-Barth Motorcoach from Motor Vacations Unlimited (MVU) on December 19, 1983. MVU was a sole proprietorship operated by decedent, Charles F. Dolan. The motorcoach never operated satisfactorily, and it was returned to MVU for repair on eight occasions accounting for 330 days out of the year that claimants "operated" it.

On March 14, 1984, Charles Dolan died testate. Claimants learned of his death the following day when they called about repair work then being done on their motorcoach. On March 27, 1984, letters of office were issued appointing Alice Dolan, Charles' widow, executor. Claim notices were then published in the Chicago Daily Law Bulletin on March 30, April 6, and April 13, 1984, indicating that the claim period would end on September 27, 1984.

In June of 1984, claimants, threatening legal action, met with representatives of MVU in an attempt to resolve the continuing problems which they were having with their motorcoach. Several weeks later, MVU offered to sell the motorcoach on behalf of claimants and to forego any commission on the sale. Claimants rejected the offer and subsequently, on July 31, 1984, MVU wrote, saying in part:

> "In an effort to accommodate you and preserve our business relationship, it is our intent to permit you to return the 1981 MCC-Barth as a trade-in on a new or used coach of your choice and upon terms and conditions that are mutually acceptable to all parties involved. Furthermore, in the event a new or used coach is not purchased we will buy back the MCC-Barth at mutually acceptable terms. At this point, it is not possible to further define the terms of our agreement. These terms will be dependent upon whether you wish to purchase a new or used coach and the cost of such coach.
>
> It is our further intention to resolve this matter to your satisfaction within six (6) months of the date of this letter. As you are undoubtedly aware, Motor Vacations Unlimited is in the process of reorganizing its business due to the sudden death of its founder and owner, Charles F. Dolan. We appreciate your cooperation and patience during this reorganization period."

Claimants rejected this offer and, instead, returned the motorcoach to MVU to have the engine replaced. In an exhibit filed during the circuit court proceedings, claimants acknowledge that they knew, as of June 1984, that: Dolan had died; the business operators then represented to them that "everything was tied up in the estate"; and that the business operators would "speak with their attorney to see what could be done legally through the estate." The motorcoach was in MVU's possession from June 28 to November 15, 1984, for repairs. During that time, on September 27, 1984, the probate claim period expired.

Decedent's business, MVU, continued in operation from the time of Charles Dolan's death in March 1984 until its sale in January 1985. Claimants have not noted nor does the limited appellate record pro-

vide evidence of authority for the continued operation of decedent's business, which may or may not have been in accord with section 19—6 of the Act. Ill. Rev. Stat. 1983, ch. 110½, par. 19—6.

Following the replacement of the engine and after experiencing continued problems with the motorcoach, claimants filed a revocation of acceptance in accordance with section 2—608 of the UCC (Ill. Rev. Stat. 1983, ch. 26, par. 2—608) and a corresponding claim against decedent's estate on January 7, 1985. On April 15, 1985, responding to a motion to dismiss their claim as not timely, claimants filed a petition contending that section 18—3 of the Act, providing for notice by publication (Ill. Rev. Stat. 1983, ch. 110½, par. 18—3), violated both the State and Federal constitutions by depriving them of property without providing the notice minimally required by due process. Alternatively, they argued that the Chicago Daily Law Bulletin was not a secular newspaper of general circulation.

On July 2, 1985, after a hearing on claimants' petition, the circuit court ruled: (1) section 18—3 of the Act was not unconstitutional on its face nor as applied; (2) the Chicago Daily Law Bulletin was a secular newspaper of general circulation; and (3) the claim was not timely filed. Accordingly, the claim was dismissed and claimants appeal.

The estate has not filed a brief as appellee and this appeal is considered in accordance with *First Capitol Mortgage Corp. v. Talandis Construction Corp.* (1976), 63 Ill. 2d 128, 133, 345 N.E.2d 493. The Law Bulletin Publishing Company, with leave of this court, has filed a brief as *amicus curiae* responding to the contention that the Chicago Daily Law Bulletin is not a secular newspaper of general circulation.

I

Claimants initially contend that section 18—3 of the Act, providing for notice by publication, denied them due process of law since it was not reasonably calculated to apprise them of the six-month claims limitation period where the estate knew their names and addresses and, in fact, did send notice of the claims period to at least one other claimant.

The constitutional guarantees of due process are viewed as generally the same under both the Illinois and Federal constitutions. (See Ill. Const. 1970, art. I, sec. 2 (Smith-Hurd Constitutional Commentary at 109); *Rosewell v. Chicago Title & Trust Co.* (1984), 99 Ill. 2d 407, 459 N.E.2d 966, *appeal dismissed Blum v. Rosewell* (1984), 467 U.S. 1237, 82 L. Ed. 2d 813, 104 S. Ct. 3503.) Accordingly, we will address them together.

■ Previously, it has been held that an executor's actual knowl-

edge of a claim does not relieve a claimant of following the statutorily prescribed claims procedures. (*Morse v. Pacific Ry. Co.* (1901), 191 Ill. 356, 361, 61 N.E. 204; *In re Estate of Garawany* (1980), 80 Ill. App. 3d 401, 404, 399 N.E.2d 1024; *In re Estate of Newcomb* (1972), 6 Ill. App. 3d 1094, 1096-97, 287 N.E.2d 141; see *In re Estate of Worrell* (1982), 92 Ill. 2d 412, 418-19, 442 N.E.2d 211.) Claimants, however, contend that an executor's knowledge may obligate him to notify known claimants of the term of the claims period. They premise their argument primarily on *Mullane v. Central Hanover Bank & Trust Co.* (1950), 339 U.S. 306, 94 L. Ed. 865, 70 S. Ct. 652 and *Mennonite Board of Missions v. Adams* (1983), 462 U.S. 791, 77 L. Ed. 2d 180, 103 S. Ct. 2706. In *Mullane* the Supreme Court noted (*Mullane v. Central Hanover Bank & Trust Co.* (1950), 339 U.S. 306, 313, 94 L. Ed. 865, 872-73, 70 S. Ct. 652, 656):

> "Many controversies have raged about the cryptic and abstract words of the Due Process Clause but there can be no doubt that at a minimum they require that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case."

The court proceeded to hold (*Mullane v. Central Hanover Bank & Trust Co.* (1950), 339 U.S. 306, 314, 94 L. Ed. 865, 873, 70 S. Ct. 652, 657):

> "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. [Citations.]"

The Supreme Court concluded that notice can be deficient (*Mullane v. Central Hanover Bank & Trust Co.* (1950), 339 U.S. 306, 319, 94 L. Ed. 865, 876, 70 S. Ct. 652, 660):

> "not because in fact it fails to reach everyone, but because under the circumstances it is not reasonably calculated to reach those who could easily be informed by other means at hand."

Due process therefore requires that form of notice expected to inform interested and reasonably ascertainable parties of the pending adjudication of an action.

Subsequently in *Mennonite Board of Missions*, the Supreme Court stated that where the interested parties are known or reasonably ascertainable, due process may make mailed notice the minimally reasonable form of notice (*Mennonite Board of Missions v. Adams* (1983), 462 U.S. 791, 800, 77 L. Ed. 2d 180, 188, 103 S. Ct. 2706, 2712):

"Notice by mail or other means as certain to ensure actual notice is a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interests of *any* party, whether unlettered or well versed in commercial practice, if its name and address are reasonably ascertainable." (Emphasis in original.)

The Gibbs contend that their names and addresses were not only reasonably ascertainable by the estate but were in fact known by the estate through the agency of its attorneys. (*In re Marriage of Mierlak* (1981), 100 Ill. App. 3d 228, 231, 426 N.E.2d 1010, *appeal denied* (1982), 88 Ill. 2d 551; *People ex rel. Rogers v. Elrod* (1975), 35 Ill. App. 3d 26, 28, 340 N.E.2d 598.) The continued validity of section 18—3 depends upon whether known, potential estate creditor-claimants are entitled to the protection afforded by *Mullane* and *Mennonite Board of Missions* and therefore require mailed notice as a constitutional minimum.[1]

*Mennonite Board of Missions* held that notice of a tax sale as provided by publication was insufficient to satisfy the due process rights of mortgagees of real property. (*Mennonite Board of Missions v. Adams* (1983), 462 U.S. 791, 792, 77 L. Ed. 2d 180, 183, 103 S. Ct. 2706, 2708.) *Mennonite Board of Missions* minimally requires mailed notice prior to the adjudication of an identified mortgagee's rights in real property. The case *sub judice* conversely concerns what type of notice must minimally be given to creditors that an estate-claim period will lapse.

Section 18—3 is not directly concerned with giving notice of an adjudication of rights, but rather, with giving notice of the limitations period for seeking an adjudication of rights. This situation should not, therefore, be viewed as necessarily subject to the *Mullane* and *Mennonite Board of Missions* due process requirements for notice of an adjudication, but instead is more closely analogous to requiring notice of a limitations period. Unlike the notice required prior to an adjudica-

---

[1]Two other States have considered nonclaim statutes in light of the *Mennonite Board of Missions* decision. The Supreme Court of Nevada held that notice by publication did not satisfy due process requirements when the estate had actual knowledge of a claimant. (*Continental Insurance Co. v. Moseley* (1984), 100 Nev. 337, 683 P.2d 20.) The case had originally held the opposite, but that decision was vacated and remanded for reconsideration in light of the *Mennonite Board of Missions* decision. (*Continental Insurance Co. v. Moseley* (1982), 98 Nev. 476, 653 P.2d 158, *vacated* (1983), 463 U.S. 1202, 77 L. Ed. 2d 1383, 103 S. Ct. 3530.) The Supreme Court of Missouri subsequently rejected the Nevada court's analysis and upheld notice by publication under a nonclaim statute even when the potential claimant was known to the estate. *Estate of Busch v. Ferrell-Duncan Clinic, Inc.* (Mo. 1985), 700 S.W.2d 86.

tion, the Supreme Court has specifically stated that due process does not require potential defendants to notify potential plaintiffs of the impending expiration of a limitations period. *Texaco, Inc. v. Short* (1982), 454 U.S. 516, 536, 70 L. Ed. 2d 738, 755, 102 S. Ct. 781, 796.

■ Claimants contend that they were deprived of property when they lost their cause of action due to a failure to be notified of the impending expiration of the estate-claims period; that, however, is not the type of notice protected by *Mullane* and *Mennonite Board of Missions*. As is plainly evidenced by a reading of *Mullane* and *Mennonite Board of Missions* in conjunction with *Texaco, Inc. v. Short*, those cases concerned notice of a pending adjudication, not notice of the impending expiration of a limitations period.

It may also be observed that claimants already knew of decedent's death and the opening of an estate in June 1984 according to their own evidence. Under these circumstances, claimants had no constitutional right to have the estate or its representative explain to them the perils of delaying their ascertaining of any legal consequences which could result through further passage of time without action on their part. See *Chalaby v. Driskell* (1964), 237 Or. 245, 248, 390 P.2d 632, 633-34.

Section 18—3 is neither facially invalid nor as applied to these facts and did not deprive claimants of their property without due process of law.

## II

■ Claimants alternatively contend that the notice actually given under section 18—3 was invalid because the Chicago Daily Law Bulletin is not a secular newspaper of general circulation as statutorily required. (Ill. Rev. Stat. 1983, ch. 100, par. 5.) The Chicago Daily Law Bulletin has been recognized as a secular newspaper of general circulation for nearly a century; claimants have presented no facts which challenge those previous determinations. (*Maass v. Hess* (1892), 140 Ill. 576, 577, 29 N.E. 887; *Railton v. Lauder* (1888), 26 Ill. App. 655, 656, *aff'd* (1888), 126 Ill. 219.) The finding of the circuit court that the Chicago Daily Law Bulletin is a secular newspaper of general circulation is therefore affirmed.

Accordingly, the order of the circuit court dismissing claimants' petition and claims is affirmed.

Affirmed.

BILANDIC, P.J., and STAMOS, J., concur.