FARM CREDIT BANK OF ST. LOUIS, as Successor to The Federal Land Bank of St. Louis, Plaintiff-Appellant, v. McKINLEY ANDREW BROWN, a/k/a Mac Brown, Indiv., *et al.*, Defendants-Appellees.

Fifth District No. 5—90—0538

Opinion filed August 26, 1991.

Terry Sharp and William K. Richardson, both of Law Office of Terry Sharp, P.C., of Mt. Vernon, for appellant.

Edward J. Heller, of Reed, Heller & Mansfield, of Murphysboro, for appellees.

PRESIDING JUSTICE RARICK delivered the opinion of the court:

Plaintiff, Farm Credit Bank (FCB), brought an action in the circuit court of Williamson County against the defendants seeking to recover monies owed on a promissory note. The note in question had

been secured by a mortgage on certain farm ground. When the note went into default, FCB foreclosed on the mortgage and the property was sold. Because the proceeds of the sale were insufficient to pay off the outstanding balance, FCB subsequently filed the present action to recover the deficiency. Defendants filed a motion to dismiss which was granted by the trial court. Plaintiff appeals. We affirm.

On March 24, 1981, Loren Brown, as sole maker, executed a promissory note in the amount of $142,100 in favor of the Federal Land Bank of St. Louis, plaintiff's predecessor in interest. The loan was to be repaid in 24 annual installments and was secured by a mortgage executed by Loren and Beth Brown on certain farm ground in Hamilton County, Illinois. Loren Brown died on April 22, 1983, and his will was admitted to probate. Article first of the will provided that the executor was to fully pay all just debts and funeral expenses. Article second established a testamentary trust for the benefit of Beth Brown during her lifetime, the corpus of which consisted of two tracts of land in Saline County and $10,000 in cash. McKinley Brown and Ann Hurst were the residual beneficiaries of the trust, and McKinley Brown was named as testamentary trustee. The residue of the estate, including the property subject to FCB's mortgage, passed to Beth Brown via article third. Letters testamentary were issued on May 27, 1983, naming decedent's son, defendant McKinley Brown, as executor. McKinley Brown caused notice of Loren Brown's death to be published in September of 1983. An inventory of the estate assets was filed on May 25, 1984, the total value of which was listed at $1,112,263.78. Item one in the inventory described the Hamilton County property, which consisted of approximately 400 acres of farm ground, valued at $800 per acre, or $288,000. The mortgage in favor of FCB covered 200 acres of this land, and the inventory noted the existence of the mortgage and an outstanding balance due thereon of $145,736. On January 10, 1987, McKinley Brown wrote a letter to FCB indicating that Loren Brown was deceased and that Beth Brown was now the owner of certain stock Loren Brown had held in FCB. No claim was filed by FCB. Final accounting was filed on August 21, 1987. The final accounting was approved and the estate was closed.

The annual installment payments on the note continued to be made through 1987. The 1988 payment was not paid, and the loan went into default. Plaintiff filed a complaint for foreclosure on November 22, 1988, naming as defendants Beth Brown, McKinley Brown, unknown owners, nonrecord claimants, and the unknown heirs and devisees of Loren Brown. Although the complaint specifically alleged that none of the named defendants were personally liable

for any deficiency, the prayer for relief requested a personal judgment for any deficiency "if authorized by law." The judgment of foreclosure ordered the property to be sold and specifically found that none of the named defendants were liable for any deficiency arising from such sale, but also provided that if the proceeds of the sale were insufficient to pay the amounts due plaintiff, the sheriff was to specify the amount of the deficiency "and [that] a judgment shall be entered therefor, if appropriate." The property was sold and the sheriff's report of sale was entered on June 2, 1989. According to the report, the property was purchased by FCB for $90,000. At the time of sale, the total amount of indebtedness including interest on the judgment, costs, and fees, was $173,332.46, which left a deficiency in the amount of $83,332.46. The present complaint for deficiency was filed on January 5, 1990. Count I of the present complaint sought a finding by the trial court that FCB still had a claim against the estate of Loren Brown for the deficiency. Count II sought a full accounting from McKinley Brown in his capacity as trustee of the testamentary trust. Count III sought the imposition of a constructive trust on the testamentary trust, the income from the administration of which would be paid to FCB, or, alternatively, the sale of sufficient trust assets to pay FCB the amount of the deficiency. Count IV sought a judgment against McKinley Brown, in his capacity as surety under his executor's bond, for breach of his duties as executor. Count V alleged that McKinley Brown continued making payments or caused such payments to be made on the note, constituting fraud, and sought a personal judgment against him. Count VI sought a personal judgment against McKinley Brown for breach of his duties to FCB as executor. Count VII sought a judgment based on unjust enrichment against Beth Brown, individually and as residual beneficiary, and count VIII sought the imposition of a constructive trust upon the residue of the estate. Defendants moved to dismiss the complaint based upon the *res judicata* effect of the prior foreclosure action and FCB's failure to file a claim within six months of the date the claims notice was published or within six months of having received actual notice. The trial court found that plaintiff's complaint against the estate was barred by the claims limitation period. The court also found that pursuant to section 15—1501 of the Illinois Mortgage Foreclosure Law (Ill. Rev. Stat. 1987, ch. 110, par. 15—1501), parties against whom personal judgment of deficiency is sought are necessary parties to a foreclosure action; that plaintiff did not seek a deficiency judgment against any of the defendants in the complaint for foreclosure; and that the judgment thereon provided that none of the named defendants therein

were liable for a deficiency. Based upon this finding the trial court concluded that the claims in plaintiff's present complaint were also barred by the *res judicata* effects of the judgment of foreclosure. Finally, the trial court found because McKinley Brown had given notice to FCB of Loren Brown's death, an allegation of fraudulently concealing that death could not be sustained, and the court entered an order dismissing all eight counts of the complaint.

On appeal, FCB argues that it has a proprietary interest in the traceable assets of the estate because it did not receive actual notice of decedent's death until after the claims bar date had passed. Citing *Tulsa Professional Collection Services, Inc. v. Pope* (1988), 485 U.S. 478, 99 L. Ed. 2d 565, 108 S. Ct. 1340, FCB argues that due process requires that known creditors of an estate be given actual notice of death, and that the trial court erred in not applying *Tulsa* retroactively.

At the time of decedent's death, section 18—12 of the Probate Act provided:

> "All claims against the estate of a decedent, except expenses of administration and surviving spouse's or child's award, not filed with the representative or the court within 6 months after the entry of the original order directing issuance of letters of office are barred as to all of the decedent's estate ***." (Ill. Rev. Stat. 1983, ch. 110½, par. 18—12.)

Notice of death was therefore not required and the lack thereof did not operate to prevent creditors' claims from being barred. In 1985, section 18—12 was amended to make publication notice of death pursuant to section 18—3 a requirement before a claim would be barred. (Ill. Rev. Stat. 1985, ch. 110½, pars. 18—3, 18—12.) This amendment applied to the estates of decedents dying on or after September 16, 1985. (Pub. Act 84—395, eff. Sept. 16, 1985.) Because Loren Brown died prior to September 16, 1985, notice of death by publication or otherwise was not required by statute.

On April 19, 1988, approximately eight months after the estate was closed, the Supreme Court ruled in *Tulsa* that notice by publication alone did not satisfy the requirements of due process as to known creditors of an estate. Such creditors, the court held, were entitled to actual notice. Because the decision in *Tulsa* was rendered after the estate of Loren Brown was closed, the rule announced therein impacts on the present case only if *Tulsa* is applied retroactively. The question of the retroactive application of *Tulsa* appears to be a case of first impression in Illinois.

To determine whether the *Tulsa* rule should be applied retroactively, we must examine the criteria for retroactive application of decisions in civil cases articulated in *Chevron Oil Co. v. Huson* (1971), 404 U.S. 97, 30 L. Ed. 2d 296, 92 S. Ct. 349. Those criteria are:

> "First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied [citation], or by deciding an issue of first impression whose resolution was not clearly foreshadowed [citation]. Second, it has been stressed that 'we must *** weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation.' [Citation.] Finally, we have weighed the inequity imposed by retroactive application, for '[w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the "injustice or hardship" by a holding of nonretroactivity.' [Citation.]" *Chevron*, 404 U.S. at 106-07, 30 L. Ed. 2d at 306, 92 S. Ct. at 355.

■ Regarding the first criterion, both parties maintain that the *Tulsa* result was "clearly foreshadowed" by the Supreme Court's decisions in *Mullane v. Central Hanover Bank & Trust Co.* (1950), 339 U.S. 306, 94 L. Ed. 865, 70 S. Ct. 652, and *Mennonite Board of Missions v. Adams* (1983), 462 U.S. 791, 77 L. Ed. 2d 180, 103 S. Ct. 2706, and by the court's rationale in *Gibbs v. Estate of Dolan* (1986), 146 Ill. App. 3d 203, 496 N.E.2d 1126. In *Mullane*, the Supreme Court held that as a matter of due process, State action affecting property must generally be accompanied by notice. (*Mullane*, 339 U.S. at 314, 94 L. Ed. at 873, 70 S. Ct. at 657.) In *Mennonite*, the court held that actual notice was required of a proceeding which would adversely affect liberty or property interests where the name and address of the party in question was reasonably ascertainable. (*Mennonite*, 462 U.S. at 800, 77 L. Ed. 2d at 188, 103 S. Ct. at 2712.) In *Gibbs*, the court held that *Mullane* and *Mennonite* did not require that actual notice be given to known creditors of an estate because those cases concerned notice of a pending adjudication of rights, whereas the claims bar date in a probate proceeding was analogous to a statute of limitations period, notice of which was not required. (*Gibbs*, 146 Ill. App. 3d at 208-09, 496 N.E.2d at 1130, citing *Texaco, Inc. v. Short* (1982), 454 U.S. 516, 536, 70 L. Ed. 2d 738, 755, 102 S. Ct. 781, 796.) Contrary to the parties' assertions, *Gibbs*, far from foreshadowing the result in *Tulsa*, portends just the opposite. (We note that the *Gibbs*

analogy is no longer viable, however, given the Supreme Court's finding in *Tulsa* that Oklahoma's nonclaim statute was not a self-executing statute of limitations and that *Short* was inapposite. The *Tulsa* court reasoned that because the probate court was involved throughout the process, because the nonclaim statute is operative only after probate proceedings have been commenced, and because the time bar is not triggered by the appointment by the court of an executor or executrix, Oklahoma's nonclaim statute was not self-executing and so was not analogous to a statute of limitations. (*Tulsa*, 485 U.S. at 486-87, 99 L. Ed. 2d at 576, 108 S. Ct. at 1345.) The claims bar date set forth in section 18–12 is triggered by the issuance of letters testamentary by the court. Clearly, the claims bar date contained in the Illinois Probate Act, like that of Oklahoma's probate code, is not self-executing.) We note also that in *Tulsa*, the Supreme Court acknowledged that "the almost uniform practice is *** to provide only publication notice." (*Tulsa*, 485 U.S. at 489, 99 L. Ed. 2d at 578, 108 S. Ct. at 1347.) Given this and the decision in *Gibbs*, we are not persuaded that the decision in *Tulsa* was "clearly foreshadowed."

We are, however, convinced that *Tulsa* clearly overrules past precedent upon which the parties may have relied. It has long been the law in Illinois that it was the responsibility of the creditor to formally notify the representative of its claim and that absent such notice, the representative was not required to pay the claim, even if he had actual knowledge of it. (*In re Estate of Worrell* (1982), 92 Ill. 2d 412, 442 N.E.2d 211, citing *Morse v. Pacific Ry. Co.* (1901), 191 Ill. 356, 61 N.E. 104; *In re Estate of Newcomb* (1972), 6 Ill. App. 3d 1094, 287 N.E.2d 141; *Bosnak v. Murphy* (1960), 28 Ill. App. 2d 110, 170 N.E.2d 640.) As the court in *Worrell* noted, the statute's insistence that the creditor formally notify the estate representative of his claim "[was] indicative of a policy that [had] existed in Illinois for many years." (*Worrell*, 92 Ill. 2d at 420, 442 N.E.2d at 214-15.) The sufficiency of notice by publication, even as to known creditors, was impliedly upheld in *Gibbs* wherein the court distinguished *Mullane* and *Mennonite* and rejected appellant's contention that due process required more than publication notice. (*Gibbs*, 146 Ill. App. 3d 203, 496 N.E.2d 1126.) Although the court in *Tulsa* ultimately rejected the distinction the *Gibbs* court drew between *Mullane, Mennonite,* and the case before it, *Gibbs* is illustrative of the state of the law in Illinois at the time the Brown estate was probated. We find that the first *Chevron Oil* criterion militates in favor of a nonretroactive application of *Tulsa*.

■ The second *Chevron Oil* criterion requires us to weigh the merits and demerits of each case by determining whether retroactive application would further the rule announced in *Tulsa*. The purpose of the actual notice requirement is to prevent known or readily ascertainable creditors from being deprived of a property interest without due process of law, as determined by *Mallone* and *Mennonite*. While retrospective application might further the purpose and operation of the rule, we believe that given the hardship which would be created by retrospective application to an estate which is already closed and the fact that the rule in *Tulsa* represents a departure from past probate law, the demerits of retrospective application outweigh the merits.

■ The final factor to be considered under *Chevron Oil* is the potential inequity, injustice, and hardship that might be created by retroactive application. Retroactive application of the actual notice requirement of *Tulsa* to estates already closed could open a Pandora's box and cause the disturbance of many settled property rights, rights defined by reliance on long-standing and well-settled law. One of the very purposes of the claims limitation period, and the reason why our courts have adamantly refused to craft exceptions to it, is to promote the expeditious disposition of estates.

The question of retroactive application of *Tulsa* has been addressed by the courts of several other States. In *Hanesworth v. Johnke* (Wyo. 1989), 783 P.2d 173, the supreme court of Wyoming declined to apply *Tulsa* retroactively. Applying the factors set forth in *Chevron Oil*, the court found that the *Tulsa* decision addressed a question of first impression, that the benefit of avoiding the hardships created by retroactivity weighed in favor of nonretroactive application, and that retroactive application could cause the disturbance of many property rights, creating hardship and injustice. (*Hanesworth*, 783 P. 2d at 177.) In reaching its conclusion, the Wyoming Supreme Court noted with respect to the first criterion that the Supreme Court in *Tulsa* "acknowledged that it rejected a practice widely adopted by state legislatures and courts." (*Hanesworth*, 783 P.2d at 177.) In *Estate of McDowell* (1989), 245 Kan. 278, 777 P. 2d 826, the supreme court of Kansas applied *Tulsa* to the case under consideration, even though the decedent had died and probate proceedings had been initiated prior to the *Tulsa* decision. After reiterating the criteria set forth in *Chevron Oil*, the court in *McDowell* held that *Tulsa* was applicable. The court reasoned that because the estate was still open at the time the *Tulsa* decision was rendered, because no funds had been distributed, and because no real estate titles would be involved, applica-

tion of *Tulsa* would cause no significant hardships, inequities, or disruptions. These are crucial distinctions between *McDowell* and the case at bar. In *Trustees of the Washington-Idaho-Montana Carpenters-Employees Retirement Trust Fund v. Galleria Partnership* (1989), 239 Mont. 250, 780 P. 2d 608, the supreme court of Montana characterized *Tulsa* as a "step-out" from the earlier cases of *Mullane* and *Mennonite*. In *Missouri Highway & Transportation Comm'n v. Myers* (Mo. 1990), 785 S.W.2d 70, the supreme court of Missouri stated in *dicta* that a persuasive argument could be made for not applying *Tulsa* retroactively.

Based upon our analysis and the opinions of the high courts of a number of our sister jurisdictions, we hold that the Supreme Court's decision in *Tulsa* should not be given retroactive effect. We are aware that the court in *Rose v. Kaszynski* (1988), 178 Ill. App. 3d 266, 533 N.E.2d 73, relied on *Tulsa* in affirming the trial court's allowance of a claim against an estate of a decedent who died in 1984, a claim which was not made prior to the expiration of the claims limitation period. It is not clear from the opinion whether the estate was still open at the time *Tulsa* was decided and the court does not address the question of retroactivity. To the extent that our opinion is in conflict with *Rose*, we decline to follow it.

■ Having determined that *Tulsa* should not be applied retroactively, FCB was not entitled, as a matter of due process, to actual notice of Loren Brown's death. Under the statutes in force at the time, the executor was not even required to provide notice by publication, although such notice was provided in this case. Where a creditor fails to file a claim against the estate, even if such debt is not presently due and owing, he is not entitled to share in the proceeds and cannot pursue estate assets into the hands of the beneficiaries. (*Beebe v. Kirkpatrick* (1926), 321 Ill. 612, 152 N.E. 539.) Though not yet due, the note was an absolute obligation and FCB could have filed a claim against the estate for the balance due on the note. (Ill. Rev. Stat. 1983, ch. 110½, par. 18—4; *In re Estate of Lloyd* (1965), 44 Ill. App. 2d 215, 194 N.E.2d 525; *In re Estate of Whipple* (1936), 285 Ill. App. 491, 2 N.E.2d 366.) As noted above, our courts have repeatedly stressed the necessity of filing a claim and have consistently refused to create exceptions even where equity would otherwise demand such exceptions. (*Wingate v. Pool* (1860), 25 Ill. 102; *In re Estate of Ito* (1977), 50 Ill. App. 3d 817, 365 N.E.2d 1309.) Having failed to file a claim against the estate, FCB's sole and only recourse was to the mortgaged premises. *In re Estate of Duffield* (1930), 258 Ill. App. 78, 86.

■ We next address the *res judicata* effects of the prior foreclosure action on plaintiff's complaint for deficiency. The foreclosure complaint was brought against Beth Brown, McKinley Brown, unknown heirs and devisees of Loren Brown, unknown owners, and non-record claimants. Section 15—1501 of the Mortgage Foreclosure Law requires that all parties against whom personal liability is sought be joined as necessary parties. The judgment of foreclosure specifically found that none of the named defendants were liable for any deficiency that might arise from the sale. Plaintiff maintains that it had no contractual right to a deficiency judgment. Plaintiff is correct. Loren Brown was the sole maker of the note and the only party liable thereon. The mortgage agreement, signed by both Loren and Beth Brown, did not provide for an action for any deficiency should the sale of the mortgaged property produce insufficient funds to pay the outstanding debt. As stated above, FCB's only recourse was to the mortgaged premises. The only name on the mortgage, other than Loren Brown's, was Beth Brown's. The foreclosure judgment specifically found that she was not liable for any deficiency. Under the doctrine of *res judicata*, issues which have been adjudicated and determined in a former action cannot be relitigated in a subsequent action between the same parties or their privies. (*Skolnick v. Petella* (1941), 376 Ill. 500, 34 N.E.2d 825.) Accordingly, FCB cannot now seek a deficiency judgment against her.

■ Finally, we address the propriety of the court's dismissal of those counts of the complaint which are based upon McKinley Brown's actions as executor. In its complaint, FCB alleged that McKinley Brown failed to pay the just debts of the estate as he was charged to do by the will. The discharge of this duty does not include payment of debts for which no claim has been filed. It is the duty of an executor to preserve assets of the estate and pay only those debts for which a claim has been made. (*Duffield*, 258 Ill. App. at 86.) Indeed, part of an executor's duty is to raise the claims bar limitation period as a defense against otherwise valid claims. (*In re Estate of Smith* (1910), 155 Ill. App. 640.) Not only was McKinley Brown not obligated by his duty as executor to pay the debt owed to FCB, he was required *not* to pay it in view of FCB's failure to file a claim, and to have done so would have been a breach of his duty as executor. (*Fragd v. Estate of Fragd* (1912), 175 Ill. App. 240.) Plaintiff also alleged that McKinley Brown's continued payment of the annual installments of the note misled FCB into thinking that Loren Brown was alive so that FCB would not file a claim. Given that notice of Loren Brown's death was provided to FCB, however, it cannot claim to have

been misled by the actions of McKinley Brown and the trial court correctly found that the allegation of fraud could never be sustained.

For the foregoing reasons, the judgment of the circuit court of Williamson County is affirmed.

Affirmed.

CHAPMAN and GOLDENHERSH, JJ., concur.