*In re* ESTATE OF MARTIN J. MALONE (James A. Pavela, Petitioner-Appellant, v. Florence M. Malone, as Independent Ex'r, Respondent-Appellee).

First District (1st Division)   No. 1—88—3522

Opinion filed May 14, 1990.

Charles F. Marino, of Chicago, for appellant.

Querrey & Harrow, Ltd., of Chicago (Dennis A. Marks and Eric Sa-

more, of counsel), for appellee.

JUSTICE CAMPBELL delivered the opinion of the court:

Petitioner, James A. Pavela, appeals from an order entered by the circuit court granting summary judgment in favor of respondent Florence M. Malone, executor of the estate of Martin J. Malone, and dismissing petitioner's cause of action with prejudice. Petitioner had sought: (1) a declaratory judgment that sections 18—3 and 18—12 of the Probate Act of 1975 (the Act) (Ill. Rev. Stat. 1987, ch. 110½, pars. 18—3, 18—12) violated the due process clause of the Federal and Illinois constitutions, and (2) leave to file his motion to suggest the death of Martin J. Malone and to substitute the independent executor of Malone's estate as a defendant in a pending shareholders' derivative action. On appeal, petitioner contends that: (1) he has standing to challenge the constitutionality of sections 18—3 and 18—12 of the Act, and (2) sections 18—3 and 18—12 of the Act violate his constitutional right to due process.

The record indicates that prior to his death, Martin J. Malone was president, director and majority shareholder of Creative Office Interiors, Inc. (Creative). Petitioner was a shareholder of Creative. On March 8, 1985, petitioner filed a stockholders' derivative action on Creative's behalf, alleging that Martin J. Malone and others had breached their fiduciary duty to Creative. On December 21, 1986, during the pendency of the derivative action, Malone died testate. Malone's will named his wife, Florence (respondent), as independent executor and bequeathed Florence his entire estate.

Pursuant to section 18—3 of the Act, respondent published notice of Malone's death on January 15, 22 and 29, 1987, in the Chicago Daily Law Bulletin. The notice indicated that letters of office had been issued on January 12, 1987, and that any claim against the estate had to be filed within six months of that date.

Thereafter, on March 12, 1987, Creative's annual shareholders' meeting was held. Present at the meeting were respondent, petitioner, their respective attorneys, and James Flynn, secretary of Creative. At the meeting, Flynn confirmed that respondent had been named independent executor of Malone's estate, that Malone's 1,500 shares of Creative stock had been transferred to respondent pursuant to Malone's will and that the shares would be probated with his estate. Respondent, petitioner and two other individuals were then elected directors of Creative. Additional business was discussed which is not of record.

On August 26, 1987, petitioner filed his motion to suggest the

death of Martin Malone and to substitute respondent, the independent executor of Malone's estate, as a defendant in the shareholders' derivative action. On November 4, 1987, petitioner's motion was denied on the ground that the six-month statutory claim period set forth in section 18—12 of the Act had expired. Malone was then dismissed as a party defendant to the shareholders' derivative action.

Thereafter, petitioner filed a motion for reconsideration, predicated on *Tulsa Professional Collection Services, Inc. v. Pope* (1988), 485 U.S. 478, 99 L. Ed. 2d 565, 108 S. Ct. 1340, which held that due process required that reasonably ascertainable creditors of an estate "be given '[n]otice by mail or other means as certain to ensure actual notice.'" (485 U.S. at 491, 99 L. Ed. 2d at 579, 108 S. Ct. at 1348, quoting *Mennonite Board of Missions v. Adams* (1983), 462 U.S. 791, 800, 77 L. Ed. 2d 180, 188, 103 S. Ct. 2706, 2712.) Petitioner argued that because he was a known claimant of Malone's estate who had been given only publication notice, he had been denied due process and his original motion to substitute the independent executor should have been granted. In an order dated July 27, 1988, the trial court continued petitioner's motion for reconsideration to enable petitioner to present the question regarding the constitutionality of sections 18—3 and 18—12 of the Act to the probate court.

On August 4, 1988, petitioner filed in the probate court a "verified petition for a declaratory judgment that sections 18—3 and 18—12 of the Probate Act violate the due process clause and for leave to file a claim herein." In his petition, petitioner alleged the chronology of events up to that time, including an allegation that he had first learned of the statutory claim date in August 1987 when respondent responded to his motion to substitute. Petitioner further alleged that pursuant to *Tulsa*, sections 18—3 and 18—12 of the Act violate the due process provisions of the Federal and Illinois constitutions. Petitioner requested a declaration that sections 18—3 and 18—12 of the Act were unconstitutional and further requested leave to file a claim regarding the shareholders' action. The probate court granted petitioner leave to file his petition. Respondent then moved for summary judgment, which was granted. In entering summary judgment, the trial court declined to rule on the issue of constitutionality and predicated its determination on the fact that petitioner and his attorney had had actual notice of Malone's death within the six-month claim period and, therefore, lacked standing to bring a claim alleging the unconstitutionality of sections 18—3 and 18—12 of the Act. Petitioner appealed.

■ The purpose of summary judgment is to render expeditious

judgment on questions of law after first deciding that no genuine issue as to any material fact exists between the parties. (*Kusiciel v. La Salle National Bank* (1982), 106 Ill. App. 3d 333, 435 N.E.2d 1217.) In the present case, there is no dispute as to the facts underlying the cause of action. Rather, the sole issue before this court is whether, as a matter of law, petitioner had received actual notice of the claim period, thereby denying him standing to allege that the publication notice provisions of sections 18—3 and 18—12 of the Act are unconstitutional.

In *Mennonite Board of Missions v. Adams* (1983), 462 U.S. 791, 800, 77 L. Ed. 2d 180, 188, 103 S. Ct. 2706, 2712, the Supreme Court held that, "Notice by mail or other means as certain to ensure actual notice is a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interests of any party, whether unlettered or well versed in commercial practice, if its name and address are reasonably ascertainable." In determining whether notice given in a particular circumstance is sufficient to "ensure actual notice," the Supreme Court has looked at four factors (actual notice factors): (1) whether the form of notice relies on mere chance to reach the attention of the other party (*Mullane v. Central Hanover Bank & Trust Co.* (1950), 339 U.S. 306, 94 L. Ed. 2d 865, 70 S. Ct. 652); (2) whether the form of notice is designed to attract the attention of the other party (*Mennonite Board of Missions*, 462 U.S. 791, 77 L. Ed. 2d 180, 103 S. Ct. 2706); (3) whether the actual means of providing notice is reliable (*Greene v. Lindsey* (1982), 456 U.S. 444, 72 L. Ed. 2d 249, 102 S. Ct. 1874); and (4) whether the means of notice was reasonable when compared to other alternatives. *Greene v. Lindsey*, 456 U.S. 444, 72 L. Ed. 2d 249, 102 S. Ct. 1874.

In the present case, on March 12, 1987, three months before the expiration of the statutory claim period, petitioner and his attorney attended Creative's annual shareholders' meeting. At the meeting, James Flynn, Creative's secretary, mentioned that respondent had been named independent executor of Malone's estate and that Malone's 1,500 shares of Creative stock had been transferred to respondent pursuant to Malone's will and would be probated with the estate. Application of these facts to the actual notice factors indicates that petitioner had sufficient actual notice at the time of the meeting to file his motions. First, the information conveyed at the meeting did not rely on chance to bring notice to petitioner of Malone's death, of respondent's appointment as executor, and of the transfer of Malone's shares. The meeting was an annual shareholders' meeting, which petitioner, as a shareholder, attended. Second, the Secretary's report was

specifically prepared to be read to the shareholders and was intended to attract their attention. Third, the report was reliable and, fourth, it was a reasonable means by which to convey the information relevant to the shareholders. Although notice by mail could also have conveyed this information to petitioner, the Supreme Court has not held that mail notice is necessary in every situation where notice is required. The Court merely held that the form of the notice must be certain to ensure actual notice. *Mullane*, 339 U.S. 306, 94 L. Ed. 2d 865, 70 S. Ct. 652.

■ With respect to the content of the actual notice, petitioner argues that actual notice should contain the same information statutorily required of publication notice and that the extended claim period for delayed publication notice should apply to delayed actual notice. Without supporting authority, petitioner asserts that "there is no reason" for not extending the publication notice requirements to actual notice. Contrary to petitioner's contention, there is a fundamental reason why the publication notice requirements of section 18—3 of the Act should not be extended to actual notice: the legislature expressly limited section 18—3 to publication and it is not within the province of this court to rewrite statutory law. Rather, this court's function is to interpret the law. *Ralston v. Plogger* (1985), 132 Ill. App. 3d 90, 476 N.E.2d 1378.

Moreover, petitioner's argument that he did not receive sufficient information at the shareholders' meeting to notify him of the duration of the statutory claim period is more akin to an ignorance of the law defense than a due process claim. It is axiomatic that everyone is presumed to know the law. (*Reed v. Albanese* (1966), 78 Ill. App. 2d 53, 223 N.E.2d 419.) This is particularly true of attorneys. Both petitioner and his attorney were present at the shareholders' meeting when Creative's secretary reported on Malone's death, on respondent's appointment as executor of Malone's estate and on the transfer of Malone's shares to respondent. Petitioner and petitioner's attorney are presumed to know, at the very least, that they must substitute a party for the decedent in the pending claim and that they must do so pursuant to the relevant law. By merely checking the estate's probate file for the date on which letters of office were issued or by inquiring of respondent as to when they were issued, petitioner would have learned when the statutory claim period had commenced to run. Instead, petitioner did nothing for more than five months. In our view, petitioner's failure to timely file his motions is not the result of insufficiency of actual notice; it is the result of failure to timely act on the notice received. Therefore, we conclude that petitioner had sufficient

actual notice at the time of the shareholders' meeting to file his motion to suggest the death and his motion to substitute respondent in the pending suit within the statutory claim period.

Our decision that petitioner received sufficient actual notice within the statutory period to have timely filed his motions obviates the need to discuss the constitutionality of sections 18—3 and 18—12 of the Act, which relate to publication notice to know creditors, or to discuss the retroactive application of *Tulsa Professional Collection Services, Inc. v. Pope* (1988), 485 U.S. 478, 99 L. Ed. 2d 565, 108 S. Ct. 1340, which declared a deprivation of due process as to creditors who had not received actual notice. (See *Missouri Highway & Transportation Comm'n v. Myers* (Mo. 1990), 785 S.W.2d 70.) Our decision as to actual notice also renders *Rose v. Kaszynski* (1988), 178 Ill. App. 3d 266, 533 N.E.2d 73, relied upon by petitioner, distinguishable from the facts in the present case. In *Rose*, the trial court granted a creditor's motion to join the executrix in a pending lawsuit even though the motion had not been filed until 10 months after letters of office were issued. In affirming the trial court's decision, the appellate court found that defendant had not been given in actual notice of the death. Therefore, his due process rights had been violated. As stated, in the present case, both petitioner and his attorney had sufficient actual notice to file their motions three months before the expiration of the claim period.

Accordingly, for the aforementioned reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

BUCKLEY, P.J., and O'CONNOR, J., concur.