*In re* ESTATE OF ROGER GERALD DOYLE, Deceased (Donald A. Doyle *et al.*, Petitioners-Appellants, v. Cherie C. Streitmatter *et al.*, Co-Adm'rs, Respondents-Appellees).

Third District   No. 3—91—0489

Opinion filed June 17, 1992.

G. Douglas Stephens & Associates, of Peoria (Norman McGill, of counsel), for appellants.

Kerry R. Cordis, of Princeville (Mark E. Gilles, of counsel), for appellees.

PRESIDING JUSTICE BARRY delivered the opinion of the court:

Petitioners Donald A. Doyle and Rosemary Armburst are siblings of the deceased, Roger Gerald Doyle, who died March 18, 1988. Respondents Cheri C. Streitmatter and Michael J. Doyle are adult children of the deceased and co-administrators of his estate. Petitioners appeal from an order entered by the circuit court of Peoria County denying their "Application for Payment of Claim" for funeral expenses.

The record on appeal establishes that at the time of Roger Doyle's death, Donald arranged for his brother's funeral because he did not know the whereabouts of Cheri and Michael. On March 19, 1988,

Donald and Rosemary acknowledged responsibility for expenses for the services, casket and related charges at the Wilton Mortuary, totalling $4,862.57.

Respondents learned of their father's death when they read his obituary in the newspaper. They attended the funeral and were aware of the fact that Donald and Rosemary had contracted for it. Cheri and Michael hired an attorney, opened the estate in probate and duly published notice of the six-month claim period running from the issuance of letters of office on March 24, 1988. Donald and Rosemary knew that the estate had been opened and that the children were co-administrators. Shortly after the estate was opened Donald spoke with counsel for the estate about certain insurance benefits payable upon his brother's death.

Donald and Rosemary engaged other counsel to assist them in filing a claim against the estate within three days of Roger's death. The funeral home sent regular billings to them during the claim period. Donald and Rosemary nevertheless failed to make a formal claim before the close of the claim period on September 24, 1988.

Meanwhile, Wilton Mortuary forwarded a copy of its contract with Donald and Rosemary to counsel for the estate in July 1988, but did not file a claim in probate until February 23, 1989. On motion of the co-administrators, this claim was dismissed as untimely. Ultimately, Wilton Mortuary sued Donald and Rosemary on the contract, and Donald and Rosemary filed their claim against the estate for funeral charges, interest and related costs on May 17, 1989.

At the hearing before the court, counsel for Donald and Rosemary argued that they did not receive written notice of the beginning and ending dates of the six-month statutory claim period from counsel for the estate until December 1988, several months after it had expired. The trial court found that Rosemary had paid no part of the funeral expenses, and that Donald had actual notice of the opening of the estate in ample time to file a claim for funeral expenses. The court accordingly denied the claim, as aforesaid.

In this appeal, the petitioners argue that the trial court erred in finding that Donald Doyle had actual notice of the statutory claim period before it expired, and that Donald's constitutional right to due process was violated by the estate's failure to provide him actual notice of the dates of the statutory claim period.

■ Initially, we do not find petitioners' argument concerning actual notice well-taken. The trial court did not rule that the beginning and ending dates of the claim period were matters of which Donald Doyle had actual knowledge within the statutory period. Nor did the

court rule that Donald Doyle was given written notice of the dates within the applicable period. The court ruled only that Donald Doyle had actual knowledge of relevant facts within ample time to file a timely claim against the estate. This was admitted during Doyle's testimony.

Doyle admitted that he knew within a week of his brother's death that Cheri and Michael had been appointed co-administrators of Roger's estate. In fact, letters of office were issued six days after Roger's death, and the first of three public notices was published in the "Princeville Telephone" on March 31, 1988. Donald testified that he does not subscribe to the Princeville paper, but it is manifestly clear that Donald had notice of sufficient information to pursue his claim even before the statutory notice was published.

Though it may be true that Donald did not appreciate legal consequences of his contract with the funeral home until after September 1988 when the statutory period expired, this does not alter the fact, as found by the circuit court, that Donald had ample time to ascertain his liability and had knowledge sufficient to file a timely claim against Roger's estate. Under the circumstances, we do not hesitate to affirm the circuit court's finding of actual notice.

Next, we address the petitioners' constitutional issue. The applicable statute in effect at the time of Roger Doyle's death provides, in relevant part:

"(a) It is the duty of the representative to publish once each week for 3 successive weeks, commencing within 14 days after the issuance of letters of office, a notice informing all persons of the death of the decedent, the date of issuance of the letters, the name and address of the representative and of his attorney of record and that claims may be filed within 6 months from the date of issuance of the letters and that any claim not filed within that period is barred.

\*\*\*

(c) The notice under subsection (a) \*\*\* of this Section must be published in a newspaper published in the county where the estate is being administered \*\*\*. The representative must file proof of publication with the clerk of the court." (Ill. Rev. Stat. 1987, ch. 110½, par. 18—3.)

Petitioners do not dispute that the notice published in this case complies with applicable statutory requirements, but contend that such notice is insufficient to pass constitutional muster. Petitioners specifically argue that the fact that they were represented by counsel does not excuse the duty of the estate representatives to give them, as

known creditors, personal notice of the running of the statutory claim period.

In support of their position, petitioners rely heavily on *Tulsa v. Professional Collection Services, Inc. v. Pope* (1988), 485 U.S. 478, 99 L. Ed. 2d 565, 108 S. Ct. 1340, and *Rose v. Kaszynski* (1988), 178 Ill. App. 3d 266, 533 N.E.2d 73. *Tulsa* was decided on April 19, 1988, and changed the law of Illinois with respect to the sufficiency of publication notice. Under prior law of this State, notice of the six-month claims limitation period by statutory publication was deemed adequate to satisfy constitutional due process mandates. (*Gibbs v. Estate of Dolan* (1986), 146 Ill. App. 3d 203, 496 N.E.2d 1126.) Creditors bore the responsibility to formally notify the representative of an estate of their claims by filing in the probate proceeding or suing the representative directly. Their failure to proceed in either manner timely could result in dismissal even if the representative knew of the creditors' claims. See *In re Estate of Worrell* (1982), 92 Ill. 2d 412, 442 N.E.2d 211.

In *Tulsa*, the Supreme Court considered the sufficiency of notice by publication under Oklahoma's nonclaim statute, which provided only two months from publication for filing claims against an estate. The Court initially determined that "the substantial involvement of the probate court throughout the process leaves little doubt that the running of Oklahoma's nonclaim statute is accompanied by sufficient government action to implicate the Due Process Clause." (485 U.S. at 488, 99 L. Ed. 2d at 577, 108 S. Ct. at 1346.) The court further determined that creditors have protected property interests in their claims against a debtor's estate. (485 U.S. 478, 99 L. Ed. 2d 565, 108 S. Ct. 1340.) Accordingly, the Court ruled that as to known creditors of an estate, notice by publication alone does not satisfy due process requirements. Such creditors, the Court held, are entitled to actual notice of the running of the claim period " 'by mail or other means as certain to ensure actual notice.' " 485 U.S. at 491, 99 L. Ed. 2d at 579, 108 S. Ct. at 1348, quoting *Mennonite Board of Missions v. Adams* (1983), 462 U.S. 791, 800, 77 L. Ed. 2d 180, 188, 103 S. Ct. 2706, 2712.

In *Farm Credit Bank v. Brown* (1991), 217 Ill. App. 3d 730, 577 N.E.2d 906, it was determined that the *Tulsa* rule applied in Illinois prospectively to those estates not yet closed as of April 19, 1988. Since the estate in this case has not been closed, it is clear that actual notice was required.

In *Rose v. Kaszynski* (1988), 178 Ill. App. 3d 266, 533 N.E.2d 73, the *Tulsa* rule was applied so as to allow a previously filed suit

against decedent to proceed against decedent's estate more than four months after expiration of the statutory six-month claim period. There, the court found that the plaintiff was made aware of decedent's death only six days before the close of the limitation period, and that the executor for the estate, the widow, knew of the pending cause prior to her husband's death. On these facts, the court concluded that a due process violation was stated and that the trial court did not err in allowing the action against the estate. 178 Ill. App. 3d at 269, 533 N.E.2d at 75.

By contrast, in *In re Estate of Malone* (1990), 198 Ill. App. 3d 960, 556 N.E.2d 678, plaintiff in a previously filed shareholders' derivative suit learned of decedent's (president of the subject corporation) December 21, 1986, death at a shareholder's meeting on March 12, 1987, just two months after issuance of letters testamentary. At the same meeting, the shareholder-plaintiff and his attorney learned the identities of the executor and his attorney and that decedent's shares were to be probated with his estate. Notwithstanding the acquisition of this information, action to name the executor in the shareholder suit was not taken until August 26, 1987, more than a month after the close of the statutory claim period. In defending against the executor's motion to dismiss for being time-barred, petitioner contended, as here, that the information given at the shareholders' meeting was not sufficient to meet his due process challenge because it failed to specify the beginning and ending dates of the claim period and that he did not in fact obtain such information until August 1987. In essence, petitioner argued, as here, that the content of actual notice, to be constitutionally sound, must mirror the statutory requirements for notice by publication.

On appeal, the *Malone* court distinguished *Rose* on the ground that petitioner and his attorney in *Malone* had received actual notice of the decedent's death in ample time to proceed against the estate within the statutory claim period. The court analyzed the sufficiency of actual notice by looking to four factors: (1) whether the form of notice relies on mere chance to reach the attention of the other party; (2) whether the form of notice is designed to attract the attention of the other party; (3) whether the actual means of providing notice is reliable; and (4) whether the means of notice was reasonable when compared to other alternatives. (198 Ill. App. 3d at 963, 556 N.E.2d at 680.) Based on the facts on appeal, the court did not hesitate to find that petitioner had sufficient actual notice at the time of the shareholders' meeting to file his motions in the pending suit. With regard to the content of actual notice, the court stated:

"Contrary to petitioner's contention, there is a fundamental reason why the publication notice requirements of section 18—3 of the Act should not be extended to actual notice: the legislature expressly limited section 18—3 to publication and it is not within the province of this court to rewrite statutory law. Rather, this court's function is to interpret the law. *Ralston v. Plogger* (1985), 132 Ill. App. 3d 90, 476 N.E.2d 1378." (198 Ill. App. 3d at 964, 556 N.E.2d at 681.)

The court dismissed petitioner's arguments that he in fact had insufficient notice, finding that his argument "that he did not receive sufficient information at the shareholders' meeting to notify him of the duration of the statutory claim period is more akin to an ignorance of the law defense than a due process claim." The court noted that, by acting on the information petitioner and his attorney knew and merely checking the estate's probate file, they could have ascertained the exact dates of the claim period instead of sitting on their rights for five months before moving to substitute the executor in the pending shareholder suit. 198 Ill. App. 3d at 964, 556 N.E.2d at 681.

■ We note that the case before us does not present the compelling constitutional quandry considered by the Court in *Tulsa.* There, by statute, the very short two-month window of opportunity to file claims did not open until the date of first publication of notice. Even if a creditor attended the death of its debtor, unless such creditor also kept close vigil on all newspapers of the county, the creditor risked dismissal of his claim for lack of knowledge of the date of first publication of notice. The creditor in *Tulsa* was a subsidiary of the hospital where decedent died and was certainly aware of the date of decedent's April 2, 1979, death. But, since publication of notice was not begun until July 17, 1979, 2½ months later, a claim filed two months after the date of death would have been premature. Such is not the case before us today.

In this State, the window for filing claims is not dependent on the date of notice by publication. Rather, by law the issuance of letters of office—in this case, the appointment of respondents as co-administrators—opens a six-month window during which creditors can file their claims. A creditor, as here, who is knowledgeable of the appointment of representatives of decedent's estate within days of decedent's death has sufficient information to proceed on his claim and is presumed to know that the window will close in six months. *Malone,* 198 Ill. App. 3d 960, 556 N.E.2d 678; see also *In re Estate of Sutherland* (1992), 229 Ill. App. 3d 281.

In our opinion, the facts before us today, unlike *Rose*, fall squarely within the rule of *Malone* and present an even stronger case for finding that due process requirements have been satisfied. Donald Doyle obtained all of the information needed to file a claim within a week of decedent's death. He attended the funeral, knew the identities of the co-administrators and their counsel and in fact communicated with the attorney for the estate shortly after the estate was opened in regard to insurance benefits payable upon Roger's death. The evidence of record establishes that Donald did not misunderstand the import of the knowledge he had, because prior to the expiration of the claim period he told his attorney to file the claim. On these facts, respondents' failure to provide actual notice of the exact beginning and ending dates of the claim period is insufficient to raise a claim of constitutional dimension. The fact that petitioners may not have known that the claim period by statute lasted for only six months is, as in *Malone*, ignorance of the law. The fact that no claim was filed on petitioners' behalf until nearly eight months after the claim period had expired was not for lack of due process, but of due diligence. Under the circumstances, as in *Malone*, we hold that the circuit court did not err in dismissing plaintiffs' claim as untimely.

The judgment of the circuit court of Peoria County is affirmed.

Affirmed.

SLATER and GORMAN, JJ., concur.