*In re* ESTATE OF NORMAN GRANT WINTERS, Deceased (Fern Winters, Plaintiff-Appellant, v. Winona S. Snyder, Ex'r of the Estate of Norman Grant Winters, Deceased, Defendant-Appellee.)

Fifth District   No. 5—91—0351

Opinion filed February 1, 1993.

Stephen R. Green, of Mitchell & Armstrong, Ltd., of Marion, for appellant.

Michael F. Dahlen, of Feirich/Schoen/Mager/Green, of Carbondale, for appellee.

JUSTICE GOLDENHERSH delivered the opinion of the court:

Plaintiff, Fern Winters, claimant against the estate of Norman Grant Winters, deceased, appeals from an order of the circuit court of Williamson County striking her claim against defendant, the estate of Norman Grant Winters, deceased, Winona S. Snyder, executor. In this cause, the issue we are asked to consider is whether it was a violation of due process for defendant, executor, to fail to mail to plaintiff notice of decedent's death and the resulting six-month statutory claim period pursuant to section 18—12 of the Probate Act of 1975 (the Act) (Ill. Rev. Stat. 1987, ch. 110½, par. 18—12). We affirm.

Norman Grant Winters died testate on January 30, 1989. On February 24, 1989, the circuit court entered an order admitting the will to probate and appointing decedent's son executor, as requested in de-

cedent's will. On March 1, 1989, a notice to heirs and legatees was sent to plaintiff. Included in the same mailing was a copy of the order admitting the will to probate and appointing representative. A claim notice was published in the Marion Daily Republican on March 1, 8, and 15, 1989, pursuant to section 18—3 of the Act. The claim notice stated that letters of office were issued on February 24, 1989, and that claims against the estate should be filed within six months of their issuance. Plaintiff, who was decedent's wife, informed decedent's son at decedent's funeral of the existence of promissory notes which are the basis of the instant claims. On July 17, 1989, plaintiff acknowledged receipt of part of $3,000 of a $10,000 bequest under the will. On October 17, 1989, plaintiff acknowledged receipt of the remaining $7,000.

On September 27, 1990, plaintiff filed her claims against the estate. On October 3, 1990, the successor executor, Winona S. Snyder, filed a motion to strike the claims of plaintiff alleging that the claims were not filed within six months after the issuance of letters of office as required by section 18—12 of the Act. On April 15, 1991, the circuit court entered an order granting defendant's motion to strike, relying on *In re Estate of Malone* (1990), 198 Ill. App. 3d 960, 556 N.E.2d 678. Plaintiff appeals from that order.

In this cause, plaintiff contends that newspaper notification was unreasonable because decedent's original executor was informed of plaintiff's claim against the estate and, therefore, the executor should have sent claim notification through the mail in order to inform plaintiff of the time by which a claim had to be filed. Citing *Tulsa Professional Collection Services, Inc. v. Pope* (1988), 485 U.S. 478, 99 L. Ed. 2d 565, 108 S. Ct. 1340, plaintiff maintains that publication notice will only suffice for creditors whose identities are not ascertainable; in instances where the creditor is known, due process requires actual notice, *i.e.*, mail notification. Defendant responds that plaintiff did, in fact, receive sufficient actual notice to meet the requirements of due process. Defendant argues plaintiff obviously knew of the death of her own husband and received actual notice of probate proceedings through service of process of numerous pleadings, including the petition for probate of will and for letters testamentary, the order admitting will to probate and appointing representative, and notice to heirs and legatees. In addition, plaintiff also received $10,000 through a specific bequest under the will which was given to plaintiff in two separate installments. Defendant contends that plaintiff's failure to timely file her claims against the testator's estate is not the result of

lack of actual notice but the result of failure to timely act on the notice received. We agree.

█ Under the Act, creditors' claims against an estate are barred unless such claims are presented to the executor or executrix of an estate within six months of the issuance of letters of office. (Ill. Rev. Stat. 1987, ch. 110½, par. 18—12.) Section 18—3 of the Act further provides that the representative must publish once a week for three successive weeks, beginning within 14 days after the issuance of letters of office, a notice informing all persons of, among other things, the death of decedent and an announcement that claims must be filed within six months from the date of issuance of letters or be barred. Ill. Rev. Stat. 1987, ch. 110½, par. 18—3.

The rationale for legislation such as section 18—12 of the Act is clear:

"[T]he State undeniably has a legitimate interest in the expeditious resolution of probate proceedings. Death transforms the decedent's legal relationships and a State could reasonably conclude that swift settlement of estates is so important that it calls for very short time deadlines for filing claims." (*Tulsa Professional Collection Services, Inc. v. Pope*, 485 U.S. at 489, 99 L. Ed. 2d at 578, 108 S. Ct. at 1347.)

On the other hand, "[c]reditors, who have a strong interest in maintaining the integrity of their relationship with their debtors, are particularly unlikely to benefit from publication notice. As a class, creditors may not be aware of a debtor's death or of the institution of probate proceedings." 485 U.S. at 489, 99 L. Ed. 2d at 578, 108 S. Ct. at 1347.

In *Tulsa Professional Collection Services, Inc. v. Pope* (1988), 485 U.S. 478, 99 L. Ed. 2d 565, 108 S. Ct. 1340, the Supreme Court considered an Oklahoma probate statutory scheme almost identical to that in Illinois. Under the nonclaim provision of Oklahoma's Probate Code, creditors' claims against an estate are generally barred unless filed within two months of the publication notice of the commencement of probate proceedings. The *Tulsa* Court held that if a creditor's identity is known or reasonably ascertainable, the due process clause of the fourteenth amendment requires that the creditor be given notice by mail or such other means certain to ensure actual notice; publication notice in such situations is insufficient. (485 U.S. at 491, 99 L. Ed. 2d at 579, 108 S. Ct. at 1348.) The *Tulsa* Court relied on *Mullane v. Central Hanover Bank & Trust Co.* (1950), 339 U.S. 306, 94 L. Ed. 865, 70 S. Ct. 652, and *Mennonite Board of Missions v. Adams* (1983), 462 U.S. 791, 77 L. Ed. 2d 180, 103 S. Ct. 2706, in making its

determination. In *Mullane*, the Supreme Court held that as a matter of due process, State action affecting property must generally be accompanied by notice. (*Mullane*, 339 U.S. at 314, 94 L. Ed. at 873, 70 S. Ct. at 657.) The *Mennonite* Court held that actual notice was required of a proceeding which would adversely affect liberty or property interests where the name and address of the party in question were reasonably ascertainable. *Mennonite*, 462 U.S. at 800, 77 L. Ed. 2d at 188, 103 S. Ct. at 2712.

The *Tulsa* Court also analyzed the Oklahoma nonclaim statute there in question to determine whether it was a self-executing statute of limitations. The *Tulsa* Court reasoned that because the probate court was involved throughout the process, because the nonclaims statute was operative only after probate proceedings commenced, and because the time bar was not triggered by the appointment by the court of an executor or executrix, Oklahoma's nonclaim statute was not self-executing and, as such, was not analogous to a statute of limitations. (*Tulsa*, 485 U.S. at 486, 494, 99 L. Ed. 2d at 575-76, 581, 108 S. Ct. at 1345, 1349-50.) This was important in *Tulsa* and likewise important here because due process does not require that potential plaintiffs be given notice of the impending expiration of a period of limitations. See *Texaco, Inc. v. Short* (1982), 454 U.S. 516, 70 L. Ed. 2d 738, 102 S. Ct. 781.

In *Farm Credit Bank v. Brown* (1991), 217 Ill. App. 3d 730, 577 N.E.2d 906, we recently had the opportunity to analyze section 18—12 of the Act, which, as previously stated, is similar to the Oklahoma statute discussed in *Tulsa*. In *Farm Credit*, we determined that the claims bar date contained in section 18—12 of the Act is similar to the Oklahoma statute in that it is not self-executing but is triggered by the issuance of letters testamentary. (217 Ill. App. 3d at 736, 577 N.E.2d at 910.) We must therefore address whether any notice was given to plaintiff herein and, if so, whether such notice was sufficient to ensure actual notice.

■ In determining whether notice given in a particular circumstance is sufficient to "ensure actual notice," a four-part test has been devised: (1) whether the form of notice relies on mere chance to reach the attention of the other party (*Mullane v. Central Hanover Bank & Trust Co.* (1950), 339 U.S. 306, 94 L. Ed. 865, 70 S. Ct. 652); (2) whether the form of notice is designed to attract the attention of the other party (*Mennonite Board of Missions v. Adams* (1983), 462 U.S. 791, 77 L. Ed. 2d 180, 103 S. Ct. 2706); (3) whether the actual means of providing notice is reliable (*Greene v. Lindsey* (1982), 456 U.S. 444, 72 L. Ed. 2d 249, 102 S. Ct. 1874); and (4) whether the

means of notice was reasonable when compared to other alternatives. *Greene v. Lindsey*, 456 U.S. 444, 72 L. Ed. 2d 180, 102 S. Ct. 1874; *In re Estate of Malone* (1990), 198 Ill. App. 3d 960, 963, 556 N.E.2d 678, 680.

■ In the instant case, plaintiff was well aware of the fact that the testator, her husband, had died. Furthermore, plaintiff was served with notice of pending probate matters on several occasions. Plaintiff received copies of the petition for probate of will and letters testamentary, the order admitting will to probate and appointing representative, and notice to heirs and legatees, all well within the six-month period in which claims against the estate were to be filed. Finally, plaintiff received a $10,000 bequest under the will, which was paid in two installments, one of $3,000 and one of $7,000, also within the six-month period. The record clearly shows plaintiff acknowledged receipt of these installments. Application of these facts to the actual notice factors listed above shows that plaintiff had sufficient actual notice. The service of process and actual receipt of money bequeathed to plaintiff under the will do not rely on chance to reach plaintiff's attention. Plaintiff's knowledge of her husband's death is reliable, and service of process is also known for its reliability. While plaintiff contends she should have been notified of the duration of the statutory claim period, we do not believe such notification is required in these circumstances.

In *In re Estate of Malone* (1990), 198 Ill. App. 3d 960, 556 N.E.2d 678, our colleagues on the First District Appellate Court rejected a similar argument. In *Malone*, the decedent, prior to his death, was president, director and majority shareholder of Creative Office Interiors, Inc. (Creative). The petitioner was a shareholder in Creative. Prior to decedent's death, the petitioner filed a shareholder's derivative suit. While the suit was pending, the decedent died testate and his wife, the respondent, was named executor. Pursuant to section 18—3 of the Act, the respondent published notice of the decedent's death. The notice indicated that letters of office had been issued on January 12, 1987, and that any claim against the estate had to be filed within six months of that date. Three months after the issuance of letters, Creative's annual shareholder meeting was held. Both the petitioner and executor were present, along with their respective attorneys. At the meeting, the secretary of Creative confirmed the decedent's death and the fact that the respondent had been named executor of the decedent's estate. On August 26, 1987, the petitioner filed a motion to suggest the death of the decedent and to substitute the executor of the decedent's estate as the defendant in the pending

shareholders' derivative suit. The petitioner's motion was denied on the ground that the six-month statutory claim period set forth in section 18—12 of the Act had expired. The petitioner filed a motion to reconsider predicated on *Tulsa*. The petitioner argued that because he was a known claimant of the Malone estate who was given only publication notice, he had been denied due process. The *Malone* court rejected the due process argument, finding that the petitioner had received sufficient actual notice of the decedent's death at the annual meeting. Specifically, the *Malone* court stated:

"With respect to the content of the actual notice, petitioner argues that actual notice should contain the same information statutorily required of publication notice and that the extended claim period for delayed publication notice should apply to delayed actual notice. Without supporting authority, petitioner asserts that 'there is no reason' for not extending the publication notice requirements to actual notice. Contrary to petitioner's contention, there is a fundamental reason why the publication notice requirements of section 18—3 of the Act should not be extended to actual notice: the legislature expressly limited section 18—3 to publication and it is not within the province of this court to rewrite statutory law. Rather, this court's function is to interpret the law. *Ralston v. Plogger* (1985), 132 Ill. App. 3d 90, 476 N.E.2d 1378.

Moreover, petitioner's argument that he did not receive sufficient information at the shareholders' meeting to notify him of the duration of the statutory claim period is more akin to an ignorance of the law defense than a due process claim. It is axiomatic that everyone is presumed to know the law. (*Reed v. Albanese* (1966), 78 Ill. App. 2d 53, 223 N.E.2d 419.)" (*In re Estate of Malone*, 198 Ill. App. 3d at 964, 556 N.E.2d at 678.)

Plaintiff herein makes nearly the same argument, and we, like the *Malone* court, reject the argument that actual notice must specify the duration of the statutory claim.

In the instant case, plaintiff waited over 19 months from the date of the order admitting the testator's will to probate before filing her claims against the estate. Plaintiff had notice of her husband's death and notice of several probate proceedings. The fact that plaintiff may have mentioned to her stepson, the original executor of decedent's will, sometime at the funeral, that she held promissory notes signed by decedent does not change our determination. Nor is our determination changed by the contention that *Malone* is distinguishable because the petitioner in *Malone* was represented by an attorney whereas

plaintiff herein was not. Plaintiff knew of her husband's death and received several notices of probate matters as well as a bequest of $10,000 paid in two installments. In our estimation, plaintiff's failure to timely file her claims is not the result of insufficiency of actual notice but, rather, the failure to timely act on notice received. *Malone*, 198 Ill. App. 3d at 964, 556 N.E.2d at 681; see also *In re Estate of Doyle* (1992), 229 Ill. App. 3d 995, 594 N.E.2d 774.

Plaintiff also attempts to analogize the instant case to *Rose v. Kaszynski* (1988), 178 Ill. App. 3d 266, 533 N.E.2d 73. We, however, find *Rose* distinguishable. In *Rose*, the underlying cause of action was a breach of contract action filed by the plaintiff. During its pendency the original defendant died. Letters of office in the decedent's estate were issued, and the decedent's wife was appointed executor. The wife was not joined as a party to the breach of contract action until some 10 months later. The wife reasoned that because there was a 10-month gap between the time letters of office were filed and the time she was joined as a party, the plaintiff's claim against her as executor of the decedent's estate was untimely pursuant to section 18—12 of the Act. Relying on *Tulsa*, the *Rose* court disagreed, concluding it would be a violation of due process to dismiss the plaintiff's claims because of failure to give notice, given the fact that the defendant was the decedent's widow and the underlying action had been pending for approximately five years prior to the decedent's death. (178 Ill. App. 3d at 269, 533 N.E.2d at 75.) In *Rose*, the creditor-plaintiff was never given notice of the decedent's death. In the instant case, plaintiff had knowledge of decedent's death, was served notice of several probate matters, and received a specific bequest of $10,000 under the will, all within the statutory claim period. Nevertheless, plaintiff failed to file a claim against the estate until approximately 19 months after letters had been issued. *Rose* and the instant case are clearly distinguishable.

Here, underneath the due process argument, there is clearly a family battle being waged. We have not been advised of the details nor do we care to learn of them. Such a battle very likely diminished the executor's inclination to call attention to the potential for expiration of plaintiff's claim. (See *Tulsa*, 485 U.S. at 489, 99 L. Ed. 2d at 578, 108 S. Ct. at 1347.) Nevertheless, plaintiff was well aware of decedent's death and not only knew of the institution of probate proceedings but also was kept abreast of developments therein. Plaintiff has been unable to provide us with any authority stating that known or reasonably ascertainable creditors must be given notice of the impending expiration of the period of limitations. We decline to make

such notice necessary. Instead, we find that plaintiff had actual notice within the meaning of *Tulsa*.

For the foregoing reasons, the judgment of the circuit court of Williamson County is affirmed.

Affirmed.

RARICK and MAAG,* JJ., concur.

*Justice Harrison participated in oral argument. Justice Maag was later assigned to this case in substitution for Justice Harrison, and Justice Maag has read the briefs and listened to the audiotape of oral argument.