**In the Matter of the ESTATE OF George R. DAILY, Deceased.**

**Bernice G. BRUMMEL, Phyllis Tatreau, Marabeth Baetjer, and Doris Heil, Appellants,**

v.

**Joe P. CROOKHAM and Nick Williams, Appellees.**

No. 95–584.

Court of Appeals of Iowa.

Aug. 30, 1996.

Peter C. Riley of the Tom Riley Law Firm, P.C., Cedar Rapids, for appellants.

K.J. Walker and Melissa Shafter of Faegre & Benson, L.L.P., Des Moines, for appellees.

Heard by CADY, P.J., and HUITINK and VOGEL, JJ.

VOGEL, Judge.

In 1968, Dan Prine, a distant relative of George Dailey, petitioned the district court for temporary involuntary conservatorship of Dailey. Oil had been discovered on land Daily owned in Louisiana and oil companies had sought permission to drill. Daily was in danger of losing his interest in the land as he was not defending his interest in pending litigation in Louisiana. The district court granted Prine's application. In 1970 Lake Crookham, an Oskaloosa attorney, was appointed Daily's temporary conservator. A permanent conservatorship was established in 1974 to manage Daily's rapidly-increasing assets from the oil royalties.

In 1977, Lake Crookham's brother, Joe Crookham, was appointed as successor conservator. Joe Crookham enlisted the help of Nick Williams to help care for Dailey. Dailey developed a close relationship with

Williams, who later was appointed Daily's guardian.

In 1982, Dailey told Williams he was going to leave his entire estate to him. Williams declined this gesture, but entered into discussions with Dailey regarding what he wanted to do with his estate when he died. Dailey expressed interest in a local trust which would make annual disbursements to organizations such as William Penn College, Boy Scouts of America, and the Salvation Army. He stated he wanted this trust set up to benefit the city and people of Oskaloosa.

Prior to Dailey executing his will, Dr. Sidney Smith, Daily's personal physician, examined Daily and confirmed he was an intelligent man with testamentary capacity. Dailey reviewed a financial statement reflecting the current value of his assets which had grown to several million dollars. Daily executed his will on April 11, 1986.

In 1989, Crookham filed an application to make gifts which included establishing two trusts that would have tax benefits to Daily's estate. A guardian ad litem was appointed to protect Daily's interests. Following a review of the application by special counsel, and with the guardian ad litem's concurrence, the district court concluded the trusts were consistent with Daily's testamentary intent. The trusts were established and funded by assets from the conservatorship with a combined fair market value of over $3.7 million dollars.

On March 7, 1993, George Dailey died testate. Nick Williams and Joe Crookham were appointed co-executors of the estate pursuant to the will. In compliance with Iowa Code section 633.304 (1991), they published notice of probate in the local newspaper on two consecutive weeks with the second publication occurring on March 29, 1993. Daily had no close family. The executors and their attorney, Garold F. Heslinga, searched and made inquiry regarding possible heirs. David Prine, believed to be an heir, received notice of probate and subsequently filed a petition to set aside the will.

With the district court's approval, the estate settled with Prine.

On May 17, 1994, a final report in the estate was filed showing a consolidated report of receipts and disbursements from the estate as well as the George Daily Charitable Trust and the George Daily Unitrust. As of December 31, 1993, the value of the estate was $131,695, the Unitrust $5,007,114, and the Charitable Trust $923,070. Bernice Brummel filed an objection to the final report. On July 1, 1994, the district court, in a combined order for the charitable trust and the unitrust, approved the annual report of each. No appeal was made from that final order. The unitrust was closed, and its assets were distributed to the charitable trust.

On the same day that Brummel filed her objection to the final report, she also filed a petition to set aside the will.[1] Brummel claimed, among other things, she was an heir of George Daily but had not received notice of probate. In response, the executors filed a motion for summary judgment. On February 9, 1995, Brummel filed a motion to amend her petition, seeking to add her sister and two nieces as plaintiffs to the will contest. The district court on March 10, 1995, granted Brummel's request but stated its ruling on the motion for summary judgment would apply to all newly-added parties. Also on March 10, 1995, the district court granted the executors' motion for summary judgment and dismissed all claims against the estate with prejudice.[2]

Brummel and the newly-added plaintiffs appeal.

■■■ We review the district court's order granting summary judgment for corrections of errors at law. Iowa R.App.P. 4. Summary judgment is appropriate only if there exists no genuine issue of material fact. *Farm Bureau Mut. Ins. Co. v. Milne*, 424 N.W.2d 422, 423 (Iowa 1988). The moving party has the burden to show the nonexistence of a material fact. *Id.* The evidence must be viewed in the light most favorable to

1. Brummel filed her objection to the final report on May 23, 1994.

2. The district court allowed the executors to proceed with a motion for sanctions against the plaintiffs. A stay on the issue of sanctions was granted pending this appeal.

the nonmoving party. *Thorp Credit, Inc. v. Gott,* 387 N.W.2d 342, 343 (Iowa 1986).

■ When the will was admitted to probate on March 11, 1993, the executors were required to publish notice on two consecutive weeks and mail notice to each heir of the decedent whose identity was reasonably ascertainable. Iowa Code § 633.304 (1991). An action to contest or set aside the probate of a will was to be commenced within the later of either four months from the date of the second publication or one month following the mailing of notice to all reasonably ascertainable heirs. Iowa Code § 633.309 (1991).

The second publication of notice occurred on March 29, 1993. The Petition to Contest Will was filed on May 23, 1994, almost fourteen months after the second publication. Brummel contends, although her petition was filed after the four-month limitation period, the petition should be allowed since she was a reasonably ascertainable heir and she did not receive notice. Brummel argues she is the first cousin of Daily and her status as an heir was reasonably ascertainable at the time the will was admitted to probate.

In discussing the duty of an executor to identify and notify creditors, the United States Supreme Court has stated:

> Actual notice need not be inefficient or burdensome. We have repeatedly recognized that mail service is an inexpensive and efficient mechanism that is reasonably calculated to provide actual notice. In addition, *Mullane [v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950) ] disavowed any intent to require "impracticable and extended searches ... in the name of due process." As the Court indicated in *Mennonite [Bd. of Missions v. Adams,* 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983) ], *all that the executor or executrix need do is make "reasonably diligent efforts."*

*Tulsa Professional Collection Serv. v. Pope,* 485 U.S. 478, 489–90, 108 S.Ct. 1340, 1347, 99 L.Ed.2d 565, 578 (1988) (emphasis added) (citations omitted). Our supreme court has found "the differences between creditors and heirs-at-law are not great enough to support a different notice rule." *In re Estate of Weidman,* 476 N.W.2d 357, 361 (Iowa 1991), *cert. denied,* 503 U.S. 975, 112 S.Ct. 1596, 118 L.Ed.2d 311 (1992). Thus, the ruling on notice to creditors in *Pope* is equally applicable to heirs. *Id.*

Crookham and Williams reflected on information provided to them by Daily. Daily had never identified any relatives; although, years earlier he had pointed out a farm where the Prine family lived. He never identified Brummel as a relative. Brummel testified that, although she lived in the same community as Daily, she had no contact with Daily in his adult life. The attorney for the executors examined the funeral home records for George Daily's parents and siblings. Those records indicated Daily's mother, Maude Daily, had a brother, Claude D. Prine. A further search of the death records in Mahaska County revealed the parents listed for Claude D. Prine and Maude Prine did not have the same name. Therefore, further search for Claude D. Prine's heirs was not indicated.[3] Iowa Code section 144.45 states a certified copy of a death certificate is prima facie evidence of the facts therein stated. Further search of the death records led the attorney for the executors to conclude George Daily had no living heirs. Since Daily died testate, we find reasonably diligent efforts were made to search for heirs. Brummel was not a reasonably ascertainable heir. As a result, the executors did not fail in their duty to provide notice.

■ Even if we were to find Brummel was a reasonably ascertainable heir, we find notice to her was not necessary since Brummel had actual notice. On appeal, Brummel does not dispute she was immediately aware: (1) of Daily's death; (2) of Daily's will being probated; and (3) that she was to receive nothing under the will. Our supreme court has indicated:

> If Plaintiff had actual notice of the probate proceedings, further notice may not be necessary. *See In re Estate of Malone,* 198 Ill.App.3d 960, 963, 145 Ill.Dec. 60, 63,

---

**3.** Claude Prine's parents were listed as Ellis Prine and Matilda Stevens. Maude Prine's parents were listed as Mathew Prine and Abigail Stevens.

556 N.E.2d 678, 681 (1990) (claimant who had actual knowledge of decedent's death and estate proceedings during statutory period could not claim due process violation based on published notice); *Highway & Transp. Comm'n v. Myers*, 785 S.W.2d 70, 74–75 (Mo.1990) (creditor who had actual notice of estate pendency but failed to meet time requirements is not deprived of due process by published notice).

*Weidman*, 476 N.W.2d at 361 n. 1. We interpret this statement to mean there may be some circumstances where additional notice is not necessary given the scope of the actual notice. In this case, Brummel knew not only that Daily died, but she also knew he had a will and she knew she was not a devisee under the will. We conclude, under the circumstances in this case, additional notice was not necessary when actual notice was admitted. As a result, Brummel waited too long to file the petition to contest the will and was barred by the statute of limitation.

The appellants contend the district court also erred in finding the ruling on the motion for summary judgment applied to both Brummel and the newly-added plaintiffs. While the newly-added plaintiffs argue they had no opportunity to resist the motion for summary judgment, the district court's ruling indicates the plaintiffs were on notice at the time of the hearing that the motion for summary judgment would apply to both Brummel and the newly-added plaintiffs.[4] Furthermore, our decision regarding diligent efforts to find reasonably ascertainable heirs applies fully to these newly-added plaintiffs. We conclude the district court did not err in determining the motion for summary judgment also applied to the newly-added plaintiffs.

We find the district court did not err in granting the motion for summary judgment. Since the plaintiffs' action was not timely filed, we need not consider substantive issues on appeal. Accordingly, we affirm the district court's ruling.

**AFFIRMED.**

---

4. The additional plaintiffs were named in an affidavit accompanying Brummel's May 23, 1994, objection to final report, yet did not join as plaintiffs in the petition to contest the will filed the same day. Not until February 9, 1995, did the additional plaintiffs attempt to join Brummel's action. They were represented by the same attorney who represented Brummel.