Nos. 2--95--1366, 2--95--1391 cons.

_________________________________________________________________

                              IN THE

                              APPELLATE COURT OF ILLINOIS

                              SECOND DISTRICT

_________________________________________________________________

FIRST AMERICAN TITLE INSURANCE )  Appeal from the Circuit Court

COMPANY and WINNEBAGO COUNTY   )  of Winnebago County.

TITLE COMPANY,                 )

                               )

     Plaintiffs-Appellees,     )  No. 93--MR--225                 

                               )       

v.                             )

                               )  

TCF BANK, F.A., f/k/a TCF      )  

Savings Bank, F.S.B.,          )  Honorable

                               )  Gerald F. Grubb,

     Defendant-Appellant.      )  Judge, Presiding.

_________________________________________________________________

FIRST AMERICAN TITLE INSURANCE )  Appeal from the Circuit Court

COMPANY and WINNEBAGO COUNTY   )  of Winnebago County.

TITLE COMPANY,                 )

                               )

     Plaintiffs-Appellants,    )  No. 93--MR--225                 

                               )       

v.                             )

                               )  

TCF BANK, F.A., f/k/a TCF      )  

Savings Bank, F.S.B.,          )  Honorable

                               )  Gerald F. Grubb,

     Defendant-Appellee.       )  Judge, Presiding.

_________________________________________________________________

                                                 

     JUSTICE McLAREN delivered the opinion of the court:

     The defendant, TCF Bank, appeals the trial court's order of

April 27, 1995, denying the defendant's motion for summary

judgment and granting partial summary judgment in favor of the

plaintiffs, First American Title Insurance Company (First

American) and Winnebago County Title Company (Winnebago).  The

plaintiffs appealed the court's denial of part of their summary

judgment motion, and the defendant appealed the court's partial

granting of the plaintiffs' summary judgment motion.  In

addition, the Illinois Land Title Association (Association) filed

an amicus curiae brief.  We affirm in part, reverse in part, and

remand for further proceedings.

     The following facts are taken from the pleadings and

supporting documents and affidavits.  On May 3, 1989, the

defendant granted Patricia Bartholomew a 10-year, $40,000

revolving line of credit secured by a mortgage on Bartholomew's

home located at 820 South 19th Street, Rockford, Illinois.  A

revolving line of credit is an arrangement between a lender and a

debtor in which the lender may from time to time make loans or

advances to the debtor.  Ill. Rev. Stat. 1989, ch. 17, par. 6405. 

Further, "[a]ny mortgage *** given to secure a revolving credit

loan may *** secure not only the existing indebtedness, but also

such future advances *** made within [the next] twenty years." 

Ill. Rev. Stat. 1989, ch. 17, par. 312.3.  On May 5, 1989, the

defendant recorded the mortgage document with the Winnebago

County recorder of deeds.  The document states in part: "This

mortgage secures a revolving line of credit under which advances,

payments and readvances may be made from time to time."   

     On May 18, 1990, TCF Mortgage Corporation (TCF Mortgage)

granted Bartholomew a traditional loan secured by Bartholomew's

home; the same property used to secure the defendant's loan. 

This subsequent mortgage was recorded on May 23, 1990.  Plaintiff

Winnebago acted as closing agent and title insurer for this

second loan for plaintiff First American.  Plaintiff Winnebago

guaranteed that TCF Mortgage was not subject to any "covenants,

conditions or restriction" under which TCF Mortgage's lien would

be subordinated.  On May 18, 1990, the defendant sent plaintiff

Winnebago a "payoff" letter stating the amount to be paid in full

to satisfy the defendant's loan.  The letter indicated the payoff

amount was $35,785.78.  The letter also stated: "[t]his is a

credit line; checks may be outstanding.  Please call *** for an

updated payoff figure before closing."  On May 18, 1990,

plaintiff Winnebago sent a check to the defendant for the sum

requested in the payoff letter.  On the face of the check

appeared the words "For Mortgage Payoff."  The defendant cashed

the check on May 23, 1990.  At that time, Bartholomew's credit-

line mortgage balance was reduced to zero.  However, the

defendant did not release its lien on Bartholomew's home. 

Subsequently, Bartholomew borrowed almost $40,000 on the

defendant's line of credit.  When Bartholomew defaulted, the

defendant foreclosed its mortgage on her home.  The plaintiffs

brought this suit seeking release of the defendant's lien,

damages, and the placement of TCF Mortgage's lien in first lien

position.  The plaintiffs filed a motion for partial summary

judgment, and the defendant filed a motion for summary judgment. 

The defendant and the plaintiffs both appeal.  The cases have

been consolidated. 

     The trial court granted partial summary judgment in the

plaintiffs' favor ruling that (1) as a matter of law, the

defendant was not required to release the lien; and (2) as a

matter of equity, the defendant must either release the lien or

return the funds forwarded by plaintiff Winnebago to pay off the

mortgage.  The trial court ordered the defendant either to pay

back the payoff money or to release its lien.  The parties and

the Association essentially raise two issue on appeal: (1)

whether the defendant was legally obligated to release its lien;

and (2) whether the defendant was obligated, under principles of

equity, either to release the lien or to return the payoff funds

to plaintiff Winnebago.  

     Summary judgment is proper when the pleadings, depositions,

and affidavits demonstrate that no genuine issue of material fact

exists and that the moving party is entitled to judgment as a

matter of law.  735 ILCS 5/2--1005(c) (West 1994).  In

adjudicating a summary judgment motion, a court must construe the

evidence strictly against the movant and liberally in favor of

the nonmoving party.  Espinoza v. Elgin, Joliet & Eastern Ry.

Co., 165 Ill. 2d 107, 113 (1995); Guerino v. Depot Place

Partnership, 273 Ill. App. 3d 27, 30 (1995).  "[S]ummary judgment

is encouraged to aid the expeditious disposition of a lawsuit." 

Espinoza, 165 Ill. 2d at 113.  However, it is a drastic means of

resolving litigation and should be allowed only when the moving

party's right to judgment is clear and free from doubt.  Guerino,

273 Ill. App. 3d at 30.  "Therefore, where reasonable persons

could draw divergent inferences from the undisputed material

facts or where there is a dispute as to a material fact, summary

judgment should be denied and the issue decided by the trier of

fact."  Espinoza, 165 Ill. 2d at 114.  We conduct a de novo

review of an order granting or denying summary judgment. 

Espinoza, 165 Ill. 2d at 113.  

     After reviewing the applicable statutes, the pleadings,

along with the supporting documents and affidavits, we determine

that the defendant was not legally obligated to release its lien

on Bartholomew's home.  Contrary to the opinion of the special

concurrence, we do not determine that Winnebago was prevented

"from requesting a release of the Bartholomew lien."  Slip op. at

12.  The mortgage instrument provides in part: 

          "Termination of this Mortgage.  If borrower pay [sic]

     to Lender all of the amounts owed to Lender under this

     Mortgage and under the agreement, and keeps all promises

     made in this Mortgage and in the Agreement, then Lender's

     rights in the Property will end.  Lender will send Borrower

     a document stating this and Borrower can file it with the

     County in which the Property is located."

Further, the agreement between Bartholomew and the defendant

provides in part that the defendant "will not release the lien

until [Bartholomew has] paid [the defendant] everything [she]

owe[s] [the defendant] under this agreement and [has] cancelled

this agreement."  Thus, under the clear and unambiguous language

of the mortgage and agreement, the defendant had no obligation to

release its lien on Bartholomew's property until or unless

Bartholomew cancelled the agreement.

     Further, the applicable statute clearly indicates that the

defendant was not obligated to release the lien without a request

from Bartholomew.  It is well established that in interpreting a

statute we must give the language used by the legislature its

plain and ordinary meaning.  Boaden v. Department of Law

Enforcement, 171 Ill. 2d 230, 237 (1996).  Section 4.1 of the

Interest Act mandates that the request for a release must come

directly from the borrower.  Ill. Rev. Stat. 1989, ch. 17, par.

6405.  The Interest Act permits a lender to take an interest in

real property to secure a revolving credit agreement "in excess

of $5,000."  Ill. Rev. Stat. 1989, ch. 17, par. 6405.  The

Interest Act also provides that "[a]ny request by a borrower to

release a security interest under a revolving credit arrangement

shall be granted by the lender provided the borrower renders

payment of the total outstanding balance as required by this

Section before the security interest of record may be released." 

Ill. Rev. Stat. 1989, ch. 17, par. 6405.  We determine that the

clear and unambiguous language of the statute explicitly limits

who may make a proper request for a release of a lien to the

borrower alone.  Neither party has alleged that Bartholomew

requested a release from the defendant.  Thus, we determine that

the trial court correctly ruled that, as a matter of law, the

defendant was not obligated to release Bartholomew's lien after

cashing plaintiff Winnebago's payoff check.

     The plaintiffs argue that the last sentence of section 4.1

mandates a lender to release a mortgage lien upon "[a]ny request"

and full payment of the account.  However, when the phrase "[a]ny

request" is read in context, it is clear that it refers to how

the request may be made, not who may make it.  The entire phrase

reads "[a]ny request by a borrower."  Thus, the plaintiffs'

argument fails.

     The plaintiffs also cite section 2 of the Mortgage Act (Ill.

Rev. Stat. 1989, ch. 95, par. 52) to support their argument.

Section 2 provides in part:

          "Every mortgagee of real property *** having received

     full satisfaction and payment of all such sum or sums of

     money as are really due to him from the mortgagor ***

     [shall] make, execute and deliver to the mortgagor *** an

     instrument in writing *** releasing such mortgage *** or

     shall deliver that release to the recorder or registrar for

     recording or registering."  Ill. Rev. Stat. 1989, ch. 95,

     par. 52.

However, the plaintiffs fail to recognize that the legislature

provided different requirements for traditional mortgages and

revolving credit loans.  Section 2 of the Mortgage Act (Ill. Rev.

Stat. 1989, ch. 95, par. 52) applies to "mortgages," while the

section 4.1 of the Interest Act (Ill. Rev. Stat. 1989, ch. 17,

par. 6405) and section 5d of the Illinois Banking Act (Ill. Rev.

Stat. 1989, ch. 17, par. 312.3), apply to "revolving credit

loans."  Because the case at bar involves a revolving credit

loan, and not a traditional mortgage, the plaintiffs' argument

fails.

     Next, the plaintiffs and the Association argue that the

plaintiffs acted as an agent for Bartholomew, and, thus,

Bartholomew requested a release through the plaintiffs.  It is

well established that an agent's authority may be either actual

or apparent.  See FDL Foods, Inc. v. Kokesch Trucking, Inc., 233

Ill. App. 3d 245, 256 (1992).  Actual authority may be granted

either expressly or impliedly.  FDL Foods, Inc., 233 Ill. App. 3d

at 256.  Further, "[a]n 'apparent agent' is a person who, whether

authorized or not, reasonably appears to third persons, because

of acts of another, to be authorized to act as agent for such

other person."  FDL Foods, Inc., 233 Ill. App. 3d at 256, citing

Mitchell Buick & Oldsmobile Sales, Inc. v. National Dealer

Services, Inc., 138 Ill. App. 3d 574, 582 (1985).  However, it is

well established that the authority of an agent, whether actual

or apparent, can only be established upon the words and conduct

of the alleged principal, not the alleged agent.  Tierney v.

Community Memorial General Hospital, 268 Ill. App. 3d 1050, 1062

(1994); Wadden v. Village of Woodridge, 193 Ill. App. 3d 231, 239

(1990).  In this case, there is nothing in the record to indicate

that the defendant should have reasonably believed that the

plaintiffs possessed the actual or apparent authority to request

a release on Bartholomew's behalf.  Thus, the plaintiffs'

argument fails.

     We now address whether the trial court correctly ruled that 

the defendant was obligated, under principles of equity, either

to release its lien or to return the payoff funds to the

plaintiffs.  Although the trial court ruled that principles of

equity apply to this case and ordered the defendant either to

release its lien or to pay back the payoff money, the trial court

did not articulate which equitable theory it applied.  

     The plaintiffs claim that equitable subrogation applies to

this case.  Our supreme court explained the doctrine in the

following manner: 

          "The doctrine of subrogation is a creature of chancery. 

     It is a method whereby one who has involuntarily paid a debt

     or claim of another succeeds to the rights of the other with

     respect to the claim or debt so paid.  [Citation.]  The

     right of subrogation is an equitable right and remedy which

     rests on the principle that substantial justice should be

     attained by placing ultimate responsibility for the loss

     upon the one against whom in good conscience it ought to

     fall.  [Citation.] Subrogation is allowed to prevent

     injustice and unjust enrichment but will not be allowed

     where it would be inequitable to do so.  [Citation.]  There

     is no general rule which can be laid down to determine

     whether a right of subrogation exists since this right

     depends upon the equities of each particular case."  Dix

     Mutual Insurance Co. v. LaFramboise, 149 Ill. 2d 314, 319

     (1992).

Thus, if this theory applies to this case, the subrogee

(plaintiffs) would stand in the place of the debtor

(Bartholomew). Dix Mutual Insurance Co. 149 Ill. 2d at 319.

Accordingly, the defendant in this case would be obligated to

release its lien.  

     The plaintiffs also argue that principles of equitable

estoppel should apply to this case.  "Generally, the doctrine of

equitable estoppel may be invoked when a party reasonably and

detrimentally relies on the words or conduct of another." 

Brown's Furniture, Inc. v. Wagner, 171 Ill. 2d 410, 431 (1996).

Equitable estoppel is based on the principle that one may not act

in a certain manner and then take an inconsistent position which

prejudices another who acted in reliance of the act.  Empire Fire

& Marine Insurance Co. v. Faith Truck Lines, 178 Ill. App. 3d

356, 359 (1988).  Thus, if this theory applies, the defendant

would be estopped from asserting its priority lien status.  See

Empire Fire, 178 Ill. App. 3d at 359. 

     We note, in passing, that the equitable principle of unjust

enrichment may also apply to this case.  Unjust enrichment

applies where:  (1) a party performs a service which benefits

another party; "(2) the benefitting party accepts the benefit;

and (3) the circumstances indicate that the service was not

intended to be gratuitous."  Village of Clarendon Hills v.

Mulder, 278 Ill. App. 3d 727, 735 (1996).  Thus, under this

theory, the defendant would be required either to release its

lien or to return the benefit it received from the plaintiffs;

i.e., the money given to pay off Bartholomew's debt.  See HPI

Health Care Services, Inc. v. Mt. Vernon Hospital, Inc., 131 Ill.

2d 145, 160 (1989)  ("unjust enrichment underlies a number of

legal and equitable actions and remedies, including *** the legal

actions of assumpsit and restitution or quasi-contract").  

     After reviewing the record, we determine that summary

judgment is precluded because a genuine issue of material fact

exists.  735 ILCS 5/2--1005(c) (West 1994). The plaintiffs

alleged that Winnebago requested a release from the defendant at

the same time it sent the payoff check.  The defendant denies

this allegation.  However, neither party has conclusively

supported its allegation regarding this issue.  Further, neither

party provides any information regarding whether, under the

circumstances, the defendant knew or should have known that

plaintiff Winnebago expected a release in exchange for the payoff

check.  Moreover, neither party provides any information

regarding whether plaintiff Winnebago reasonably relied on the

defendant's act of cashing the payoff check as an indication that

the defendant intended to release its lien.  Therefore, there is

a material issue of fact as to whether the plaintiffs are

entitled to equitable relief and the nature and extent thereof. 

Accordingly, we reverse that portion of the trial court's

judgment granting partial summary judgment in the plaintiffs'

favor and remand for further proceedings.

     Finally, the defendant argues that a judgment ordering

release or payback of the money would be contrary to section 4.1

of the Interest Act (Ill. Rev. Stat. 1989, ch. 17, par. 6405). 

We disagree.  We acknowledge that equity must follow the law and

that the legislature may limit the equitable power of the courts. 

In re Liquidation of Security Casualty Co., 127 Ill. 2d 434, 447

(1989).  However, nothing in the Interest Act expressly precludes

equitable remedies.  Further, the Interest Act does not address

the issue of returning the funds from a payoff check when equity

so demands.  Thus, this argument fails.

     Finally, unlike the opinion of the special concurrence, we

do not wish to speculate as to what evidence may or may not be

sufficient to sustain the relief the trial court may ultimately

grant or deny, nor do we deem it necessary to opine as to how the

trial court should view the evidence presented upon a hearing on

the merits.

     That part of the judgment of the circuit court of Winnebago

County denying relief as a remedy at law is affirmed.  That part

of the judgment granting relief in equity is reversed and the

cause is remanded for further proceedings in accordance with this

opinion.

     Affirmed in part and reversed in part; cause remanded.

     RATHJE, J., concurs.

     JUSTICE HUTCHINSON, specially concurring:

     I concur in the majority's judgment.  I agree a genuine

issue of material fact exists in the form of whether Winnebago

requested a release from defendant.  However, because I believe

the majority does not sufficiently delineate what plaintiffs must

prove to be entitled to equitable relief, I write separately to

provide the trial court with guidance upon remand.

     Initially, the reasonableness of any reliance or expectation

forming the basis for equitable relief must be determined in

light of section 4.1 of the Interest Act.  The majority

determined that section 4.1 clearly and unambiguously prevented

Winnebago from requesting a release of the Bartholomew lien.  The

fact that the action out of which arises Winnebago's need to seek

equitable relief is beyond the title company's legal authority

militates strongly against a finding of reasonableness.  How may

a party reasonably rely, or reasonably expect something in

return, on the basis of an action the law does not permit the

party to take?

     Assuming this hurdle can be cleared, any equitable theory

potentially forming the basis of a ruling in favor of plaintiffs

should not be premised exclusively on evidence that Winnebago

sent defendant what the title company alleges was a "payoff"

check on the revolving credit line.  Such evidence does not,

standing alone, establish that (1) Winnebago reasonably expected

a release of defendant's lien; (2) defendant reasonably should

have known Winnebago expected a release; (3) Winnebago's reliance

was reasonable; (4) Winnebago reasonably expected its lien to

take priority over defendant's lien; (5) defendant reasonably

should have known Winnebago expected its lien to take priority

over defendant's lien; and (6) Winnebago paid down the revolving

credit line "involuntarily."

     Basing any of the preceding findings exclusively on the

paying down of the Bartholomew revolving credit line would

require defendant to act as Winnebago's attorney--and, failing

this, to be prescient.  Defendant should not be required to

divine the reasons for and consequences of actions undertaken by

Winnebago.  Sophisticated business entities engaged in arms-

length transactions should not be duty bound to decipher and

discern the motivations for business decisions made by other

sophisticated business entities whose personnel fail to acquaint

themselves with the clear and unambiguous meaning of the law.  On

remand, if the trial court discovers only that the parties

exchanged paperwork under the impression that the revolving

credit line was a traditional mortgage--i.e., neither party

understood that a revolving credit line is governed by different

legal principles--I believe that the trial court should find

Winnebago's reliance, its expectation of a release of defendant's

lien, and the expectation of gaining first priority over this

lien unreasonable.

     This will be a difficult case on remand.  One of these

parties will be burdened with $40,000 of apparently uncollectible

debt.  Such an outcome creates a powerful and just incentive for

sophisticated lending institutions and their associated entities

to read and abide by the law.  Persons are presumed to know the

law and ignorance of the same is no excuse.  See In re Cheronis,

114 Ill. 2d 527, 535 (1986) (stating that attorney's commingling

of client funds is not excused because attorney was unaware such

conduct was prohibited); Pyle v. Ferrell, 12 Ill. 2d 547, 554-55

(1958) (stating that party's failure to take remedial action is

not excused because he did not understand his mineral rights

could be sold to satisfy delinquent taxes without sale of

attendant land); Singh v. Department of Professional Regulation,

252 Ill. App. 3d 859, 868 (1993) (stating that pharmacist's lack

of compliance with controlled substances reporting requirements

not excused because he was unaware of such requirements); In re

Estate of Winters, 239 Ill. App. 3d 730, 736 (1993) (stating that

party is presumed aware of statutory probate claim period),

quoting In re Estate of Malone, 198 Ill. App. 3d 960, 964 (1990)

(same); Kampen v. Department of Transportation, 150 Ill. App. 3d

578, 581 (1986) (stating that party transporting corrosive

liquids is presumed aware of regulations governing this

activity), citing United States v. International Minerals &

Chemical Corp., 402 U.S. 558, 563, 29 L. Ed. 2d 178, 182, 91 S.

Ct. 1697, 1701-02 (1971).  This fundamental notion must apply

equally to mammoth corporations as it does to the common man. 

Equity is not a palliative for a party's folly, nor does a harsh

result convert the ignorance of one party into an injustice by

another.

     I note, in further passing, plaintiffs did not raise the

question of unjust enrichment in their briefs.  Therefore, I

believe it is unnecessary to discuss this equitable doctrine.